**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
: 
**In re:** : **Chapter 11**
: 
**THE NEW YORK RACING ASSOCIATION INC.,** : **Case No. 06-12618 (JMP)**
: 
**Debtor.** : 
: 
------------------------------------------------------------------------x


MODIFIED THIRD AMENDED PLAN OF DEBTOR PURSUANT
TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

Attorneys for Debtor and
    Debtor in Possession

Dated:  April 28, 2008

**TABLE OF CONTENTS**

Page

Article I    DEFINITIONS ................................................................................................... 1

1.1    Administrative Expense Claim ..................................................................... 1

1.2    Adversary Litigation .................................................................................... 1

1.3    Allowed Administrative Expense Claim ...................................................... 1

1.4    Allowed Claim ............................................................................................. 1

1.5    Allowed Insured Litigation Claim ............................................................... 2

1.6    Allowed IRS Claim ..................................................................................... 2

1.7    Allowed Penalty Claim ............................................................................... 2

1.8    Allowed Priority Claim ............................................................................... 2

1.9    Allowed Priority Non-Tax Claim ................................................................ 2

1.10   Allowed Priority Tax Claim ........................................................................ 2

1.11   Allowed Secured Claim ............................................................................... 2

1.12   Allowed State Claim .................................................................................... 2

1.13   Allowed Unsecured Claim ........................................................................... 2

1.14   Amendment No. 1 ........................................................................................ 2

1.15   Ancillary Property ....................................................................................... 2

1.16   Aqueduct ...................................................................................................... 2

1.17   Assembly ...................................................................................................... 2

1.18   Ballot ........................................................................................................... 3

1.19   Ballot Date ................................................................................................... 3

1.20   Bankruptcy Code ......................................................................................... 3

1.21   Bankruptcy Court ........................................................................................ 3

1.22   Bankruptcy Rules ........................................................................................ 3

1.23   Belmont ........................................................................................................ 3

1.24   Benefit Plan .................................................................................................. 3

1.25   Business Day ................................................................................................ 3

1.26   Case Management Order .............................................................................. 3

1.27   Cash .............................................................................................................. 3

1.28   Cash Equivalents ......................................................................................... 3

1.29   Chapter 11 Case ........................................................................................... 4

i

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---:|
| 1.30 | Chapter Amendment | 4 |
| 1.31 | Claim | 4 |
| 1.32 | Class | 4 |
| 1.33 | Code of Conduct | 4 |
| 1.34 | Collateral | 4 |
| 1.35 | Confirmation Date | 4 |
| 1.36 | Confirmation Hearing | 4 |
| 1.37 | Confirmation Order | 4 |
| 1.38 | Creditor | 4 |
| 1.39 | Creditors' Committee | 4 |
| 1.40 | Debtor | 5 |
| 1.41 | Debtor in Possession | 5 |
| 1.42 | DIP Agreements | 5 |
| 1.43 | DIP Obligations | 5 |
| 1.44 | DIP Orders | 5 |
| 1.45 | Disbursement Account(s) | 5 |
| 1.46 | Disbursing Agent | 5 |
| 1.47 | Disclosure Statement | 5 |
| 1.48 | Disclosure Statement Order | 5 |
| 1.49 | Disputed Claim | 5 |
| 1.50 | Disputed Claim Amount | 5 |
| 1.51 | Effective Date | 6 |
| 1.52 | Entity | 6 |
| 1.53 | Final Order | 6 |
| 1.54 | Franchise | 6 |
| 1.55 | Franchise Agreement | 6 |
| 1.56 | Governor | 6 |
| 1.57 | Insurance Carrier | 7 |
| 1.58 | Insurance Policy | 7 |
| 1.59 | Insured Litigation Claim | 7 |

**TABLE OF CONTENTS**
**(continued)**

| | | Page |
|---|---|---|
| 1.60 | IRC | 7 |
| 1.61 | IRS | 7 |
| 1.62 | IRS Claim | 7 |
| 1.63 | Legislation | 7 |
| 1.64 | Legislature | 7 |
| 1.65 | Lien | 7 |
| 1.66 | New NYRA | 7 |
| 1.67 | New NYRA By-laws | 7 |
| 1.68 | New NYRA Certificate of Incorporation | 7 |
| 1.69 | New York State Tax Claim | 7 |
| 1.70 | NYRA | 8 |
| 1.71 | NYRA Board of Trustees | 8 |
| 1.72 | NYRA Equity Interest | 8 |
| 1.73 | Oversight Board | 8 |
| 1.74 | Pataki | 8 |
| 1.75 | PBGC | 8 |
| 1.76 | PBGC Claim | 8 |
| 1.77 | Penalty Claim | 8 |
| 1.78 | Person | 8 |
| 1.79 | Petition Date | 8 |
| 1.80 | Plan | 8 |
| 1.81 | Priority Claim | 8 |
| 1.82 | Priority Non-Tax Claim | 8 |
| 1.83 | Priority Tax Claim | 8 |
| 1.84 | Pro Rata Share | 8 |
| 1.85 | Proponent | 9 |
| 1.86 | Racetracks | 9 |
| 1.87 | Racing Law | 9 |
| 1.88 | Record Date | 9 |
| 1.89 | Reorganized Debtor | 9 |

1.90    Reorganized Debtor By-Laws...................................................................... 9

1.91    Reorganized Debtor Certificate of Incorporation ............................................. 9

1.92    Reorganized Debtor Plan Administration Agreement ....................................... 9

1.93    Reorganized Debtor Plan Administrator......................................................... 9

1.94    Saratoga................................................................................................... 9

1.95    Schedules ................................................................................................. 9

1.96    Secured Claim ........................................................................................... 9

1.97    State Claims ............................................................................................ 10

1.98    State Motion to Dismiss............................................................................ 10

1.99    State Senate ............................................................................................ 10

1.100   State Settlement Agreement....................................................................... 10

1.101   Supplemental DIP Loan ............................................................................ 10

1.102   Transferred Property ................................................................................. 10

1.103   Unsecured Claim...................................................................................... 10

1.104   VLT....................................................................................................... 10

1.105   VLT Revenues ......................................................................................... 10

1.106   UCC ...................................................................................................... 10

1.107   Other Definitions ..................................................................................... 10

Article II    COMPROMISE AND SETTLEMENT OF DISPUTES WITH
STATE; WAIVER OF CLAIMS................................................................. 11

2.1    Compromise and Settlement ...................................................................... 11

Article III    PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ................................. 12

3.1    Administrative Expense Claims.................................................................. 12

3.2    Professional Compensation and Reimbursement Claims ................................ 13

3.3    Payment of Priority Tax Claims ................................................................. 13

3.4    Debtor in Possession Financing .................................................................. 13

Article IV    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS, .................. 13

4.1    Class 1 - Priority Non-Tax Claims.............................................................. 13

4.2    Class 2 - Secured Claims .......................................................................... 13

4.3    Class 3 - Unsecured Claims ....................................................................... 14

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 4.4 | Class 4 - Insured Litigation Claims | 14 |
| 4.5 | Class 5 - State Claims | 14 |
| 4.6 | Class 6 - PBGC Claims | 14 |
| 4.7 | Class 7 – Intentionally Left Blank | 14 |
| 4.8 | Class 8 - Penalty Claims | 14 |
| 4.9 | Class 9 - NYRA Equity Interests | 14 |
| Article V | PROVISION FOR TREATMENT OF PRIORITY NON-TAX CLAIMS (CLASS 1) | 14 |
| 5.1 | Payment of Allowed Priority Non-Tax Claims (Class 1) | 14 |
| Article VI | PROVISION FOR TREATMENT OF SECURED CLAIMS (CLASS 2) | 14 |
| 6.1 | Payment of Allowed Secured Claims (Class 2) | 14 |
| Article VII | PROVISION FOR TREATMENT OF UNSECURED CLAIMS (CLASS 3) | 14 |
| 7.1 | Payment of Allowed Unsecured Claims (Class 3) | 14 |
| Article VIII | PROVISION FOR TREATMENT OF INSURED LITIGATION CLAIMS (CLASS 4) | 15 |
| 8.2 | Treatment of Allowed Insured Litigation Claims (Class 4) | 15 |
| Article IX | PROVISION FOR TREATMENT OF STATE CLAIMS (CLASS 5) | 15 |
| 9.1 | Treatment of Allowed State Claims (Class 5) | 15 |
| Article X | PROVISIONS FOR TREATMENT OF PBGC CLAIMS (CLASS 6) | 16 |
| 10.1 | Treatment of PBGC Claims (Class 6) | 16 |
| Article XI | Intentionally Left blank | 16 |
| Article XII | PROVISIONS FOR TREATMENT OF PENALTY CLAIMS (CLASS 8) | 16 |
| 12.1 | Treatment of Allowed Penalty Claims (Class 8) | 16 |
| Article XIII | PROVISION FOR TREATMENT OF NYRA EQUITY INTERESTS (CLASS 9) | 16 |
| 13.1 | Treatment of NYRA Equity Interests (Class 9) | 16 |
| Article XIV | PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN | 17 |
| 14.1 | Objections to Claims; Prosecution of Disputed Claims | 17 |

| 14.3 | Payments and Distributions on Disputed Claims | 17 |
| 14.4 | Funding of Escrow's Tax Obligation | 18 |
| Article XV | PROSECUTION OF CLAIMS HELD BY THE DEBTOR | 19 |
| 15.1 | Prosecution of Claims | 19 |
| Article XVI | ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS | 19 |
| Article XVII | IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN | 20 |
| Article XVIII | PROVISIONS FOR THE ESTABLISHMENT AND MAINTENANCE OF DISBURSEMENT ACCOUNTS | 20 |
| 18.1 | Establishment of Disbursement Account(s) | 20 |
| 18.2 | Maintenance of Disbursement Account(s) | 20 |
| Article XIX | PROVISIONS REGARDING DISTRIBUTIONS | 21 |
| 19.1 | Distributions of Cash | 21 |
| 19.2 | Timeliness of Payments | 21 |
| 19.3 | Distributions by the Disbursing Agent | 21 |
| 19.4 | Manner of Payment under the Plan | 21 |
| 19.5 | Delivery of Distributions | 21 |
| 19.6 | Undeliverable Distributions | 22 |
| 19.7 | Compliance with Tax Requirements | 22 |
| 19.8 | Time Bar to Cash Payments | 22 |
| 19.9 | Distributions After Effective Date | 22 |
| 19.10 | Setoffs | 23 |
| 19.11 | Allocation of Plan Distributions Between Principal and Interest | 23 |
| Article XX | CREDITORS' COMMITTEE | 23 |
| 20.1 | Dissolution of the Creditors' Committee | 23 |
| Article XXI | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 23 |
| 21.1 | Assumption and Assignment of Executory Contracts and Unexpired Leases | 23 |
| 21.2 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 24 |

| | | | |
|---|---|---|---|
| 21.3 | Rejection Damage Claims | 24 |
| 21.4 | Indemnification and Reimbursement Obligations | 24 |
| 21.5 | Termination of Benefit Plans | 24 |
| Article XXII | RIGHTS AND POWERS OF DISBURSING AGENT | 25 |
| 22.1 | Exculpation | 25 |
| 22.2 | Powers of the Disbursing Agent | 25 |
| 22.3 | Fees and Expenses Incurred From and After the Effective Date | 25 |
| Article XXIII | THE REORGANIZED DEBTOR PLAN ADMINISTRATOR | 25 |
| 23.1 | Appointment of Reorganized Debtor Plan Administrator | 25 |
| 23.2 | Responsibilities of the Reorganized Debtor Plan Administrator | 26 |
| 23.3 | Powers of the Reorganized Debtor Plan Administrator | 26 |
| 23.4 | Compensation of the Reorganized Debtor Plan Administrator | 26 |
| 23.5 | Termination of Reorganized Debtor Plan Administrator | 26 |
| Article XXIV | CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN; IMPLEMENTATION PROVISIONS | 26 |
| 24.1 | Conditions Precedent to Effective Date of the Plan | 26 |
| 24.2 | Waiver of Conditions Precedent | 27 |
| Article XXV | RETENTION OF JURISDICTION | 28 |
| 25.1 | Retention of Jurisdiction | 28 |
| Article XXVI | MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | 29 |
| 26.1 | Modification of Plan | 29 |
| 26.2 | Revocation or Withdrawal | 30 |
| Article XXVII | PROVISION FOR MANAGEMENT | 30 |
| 27.1 | Reorganized Debtor Directors | 30 |
| 27.2 | New NYRA Directors | 30 |
| 27.3 | New NYRA Committees | 30 |
| 27.4 | New NYRA Officers | 31 |
| Article XXVIII | ARTICLES OF INCORPORATION AND BY-LAWS OF THE DEBTOR; CORPORATE ACTION | 31 |
| 28.1 | Amendment of Articles of Incorporation/Charter | 31 |

| | | | |
|---|---|---|---|
| 28.2 | Corporate Action | | 31 |
| 28.3 | Corporate Contribution | | 31 |
| Article XXIX | MISCELLANEOUS PROVISIONS | | 32 |
| 29.1 | Title to Assets | | 32 |
| 29.2 | Discharge of Debtor | | 32 |
| 29.3 | Injunction on Claims | | 32 |
| 29.4 | Term of Existing Injunctions or Stays | | 33 |
| 29.5 | Limited Release of Directors, Officers and Employees | | 33 |
| 29.6 | Exculpation | | 34 |
| 29.7 | Preservation of Rights of Action | | 34 |
| 29.9 | Payment of Statutory Fees | | 35 |
| 29.10 | Retiree Benefits | | 35 |
| 29.11 | Post-Effective Date Fees and Expenses | | 35 |
| 29.12 | Severability | | 35 |
| 29.13 | Governing Law | | 35 |
| 29.14 | Notices | | 35 |
| 29.15 | Closing of Case | | 36 |
| 29.16 | Section Headings | | 36 |
| 29.17 | Exemption from Transfer Taxes | | 36 |
| 29.18 | Inconsistencies | | 37 |
| EXHIBIT A | LIST OF STATE CLAIMS | | 1 |
| EXHIBIT B | EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED | | 2 |

The New York Racing Association Inc. hereby proposes the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

# ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below and be equally applicable to the singular and plural of terms defined:

1.1  **Administrative Expense Claim**:  Any Claim constituting a cost or expense of administration of the Chapter 11 Case asserted or authorized to be asserted in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estate of the Debtor, any actual and necessary costs and expenses of operating the businesses of the Debtor in Possession, any costs and expenses of the Debtor in Possession for the management, maintenance, preservation, sale or other disposition of any assets, the administration and implementation of the Plan, the administration, prosecution or defense of Claims by or against the Debtor and for distributions under the Plan, any Claims for reclamation in accordance with section 546(c)(2) of the Bankruptcy Code allowed pursuant to Final Order, any Claims for compensation and reimbursement of expenses arising during the period from and after the Petition Date and prior to the Effective Date and awarded by the Bankruptcy Court in accordance with sections 328, 330, 331 or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date, and any fees or charges assessed against the Debtor's estate pursuant to section 1930, chapter 123, Title 28, United States Code.

1.2  **Adversary Litigation**:  The adversary proceeding commenced by NYRA, styled The New York Racing Association Inc. v. George E. Pataki, et al., Adv. Pro. No. 06-01957 (JMP).

1.3  **Allowed Administrative Expense Claim**:  An Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

1.4  **Allowed Claim**:  Any Claim against the Debtor or the Debtor's estate, (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing such proof of claim against the Debtor or the Debtor's estate, or (ii) if no proof of Claim has been timely filed, which has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent, in each such case in clauses (i) and (ii) above, a Claim as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  For purposes of determining the amount of an "Allowed Claim", there shall be deducted therefrom an amount equal to the amount of any claim which the Debtor may hold against the holder thereof, to the extent such claim may be set off pursuant to applicable bankruptcy or non-bankruptcy law.  Without in any way limiting the foregoing, "Allowed Claim" shall include any Claim arising from the recovery of property in

accordance with sections 550 and 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of the Plan; provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) for any purpose under the Plan, "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date and (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.5 **Allowed Insured Litigation Claim**: An Insured Litigation Claim, to the extent it is or has become an Allowed Claim.

1.6 **Allowed IRS Claim**: The IRS Claim, to the extent it is or has become an Allowed Claim

1.7 **Allowed Penalty Claim**: A Penalty Claim, to the extent it is or has become an Allowed Claim.

1.8 **Allowed Priority Claim**: A Priority Claim, to the extent it is or has become an Allowed Claim.

1.9 **Allowed Priority Non-Tax Claim**: A Priority Non-Tax Claim, to the extent it is or has become an Allowed Claim.

1.10 **Allowed Priority Tax Claim**: A Priority Tax Claim, to the extent it is or has become an Allowed Claim.

1.11 **Allowed Secured Claim**: A Secured Claim, to the extent it is or has become an Allowed Claim.

1.12 **Allowed State Claim**: A State Claim, to the extent it is or has become an Allowed Claim.

1.13 **Allowed Unsecured Claim**: An Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.14 **Amendment No. 1**: Amendment No. 1 to Amended and Restated Debtor-in-Possession Loan and Security Agreement, dated as of March 28, 2008, between NYRA and the State of New York.

1.15 **Ancillary Property**: Approximately seventy (70) parcels of real property to which the Debtor holds title but which is not used in connection with the operation of the Racetracks or thoroughbred racing.

1.16 **Aqueduct**: Aqueduct Racetrack.

1.17 **Assembly**: The Assembly of the State of New York.

1.18    **Ballot**:  The form distributed to each holder of an impaired Claim on which is to be indicated acceptance or rejection of the Plan.

1.19    **Ballot Date**:  The date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots.

1.20    **Bankruptcy Code**:  The Bankruptcy Reform Act of 1978, as amended, to the extent codified in Title 11, United States Code, as applicable to the Chapter 11 Case.

1.21    **Bankruptcy Court**:  The United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Case.

1.22    **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended, as applicable to the Chapter 11 Case.

1.23    **Belmont**:  Belmont Park.

1.24    **Benefit Plan**:  Any employee welfare benefit plan, employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan within the meaning of Section 3(3) of ERISA, including, without limitation, (a) the Retirement Plan for Administrative and Racing Employees of the NYRA Inc., (b) the Pension Plan for Employees of the Admissions Department of the NYRA Inc., (c) the Pension Plan for Employees of the Mutuel Department of the NYRA, Inc., (d) the NYRA Inc. Pension Plan-Assistant Starters, and (e) the Pension Plan for Employees of the Maintenance Department of the NYRA Inc., and any such similar employee benefit plan or arrangement which the Debtor maintained prior to the Petition Date.

1.25    **Business Day**:  A day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.26    **Case Management Order**:  The Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 1015(c) and 9007 of the Federal Rules of Bankruptcy Procedure Implementing Certain Notice and Case Management Procedures, dated November 13, 2006, entered by the Bankruptcy Court.

1.27    **Cash**:  Lawful currency of the United States of America.

1.28    **Cash Equivalents**:  Equivalents of Cash in the form of readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than One Hundred

Million Dollars ($100,000,000.00), having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

1.29 **Chapter 11 Case**:  The case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled <u>In re The New York Racing Association Inc.</u>, Chapter 11 Case No. 06-12618 (JMP), currently pending before the Bankruptcy Court.

1.30 **Chapter Amendment**:  The amendment to the Legislation which shall correct certain technical errors and clarify certain provisions of the Legislation, including, without limitation, the distribution mechanism associated with the VLT Revenues.

1.31 **Claim**:  Any right to payment from the Debtor or from property of the Debtor or its estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor or from property of the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.32 **Class**:  A category of holders of Claims or Equity Interests set forth in Article IV of the Plan.

1.33 **Code of Conduct**:  The corporate governance code of conduct, acceptable to the State of New York and NYRA, which shall be adopted by the Reorganized Debtor pursuant to the State Settlement Agreement.

1.34 **Collateral**:  Any property or interest in property of the estate of the Debtor that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.35 **Confirmation Date**:  The date the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case.

1.36 **Confirmation Hearing**:  The hearing to consider confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.37 **Confirmation Order**:  The order of the Bankruptcy Court confirming the Plan.

1.38 **Creditor**:  Any Person or Entity holding a Claim against the Debtor's estate or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtor or Debtor in Possession of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.39 **Creditors' Committee**:  The statutory committee of creditors holding Unsecured Claims appointed in the Chapter 11 Case pursuant to section 1102(a)(1) of the Bankruptcy Code, as reconstituted from time to time.

1.40    **Debtor**:  The New York Racing Association Inc.

1.41    **Debtor in Possession**:  The Debtor as debtor in possession pursuant to sections 1101(1) and 1107(a) of the Bankruptcy Code.

1.42    **DIP Agreements**:  The (a) Debtor-in-Possession Credit Agreement, dated as of November 3, 2006, between NYRA and the State of New York, (b) Amended and Restated Debtor-in-Possession Loan and Security Agreement, dated as of March 16, 2007, between NYRA and the State of New York and (c) Amendment No. 1.

1.43    **DIP Obligations**: The obligations of the Debtor arising from or related to the DIP Agreements.

1.44    **DIP Orders**: The (a) Final Order Authorizing, Nunc Pro Tunc, Debtor in Possession to Enter into Post-Petition Credit Agreement and Obtain Post-Petition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code and Granting Liens, Security Interests and Superpriority Claims, dated February 22, 2007, and (b) Order Authorizing Debtor in Possession Pursuant to Sections 363 and 364 of the Bankruptcy Code to Obtain Supplemental Postpetition Financing From the State of New York and Granting Liens, Security Interests, Superpriority Claims and Related Relief, dated March 16, 2007.

1.45    **Disbursement Account(s)**:  The account(s) to be established by the Reorganized Debtor on the Effective Date in accordance with Section 18.1 of the Plan, together with any interest earned thereon.

1.46    **Disbursing Agent**:  Solely in its capacity as agent of the Debtor to effectuate distributions pursuant to the Plan, the Reorganized Debtor, or such other Entity as may be designated by the Debtor and reasonably acceptable to the State and appointed by the Bankruptcy Court and set forth in the Confirmation Order.

1.47    **Disclosure Statement**:  The disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

1.48    **Disclosure Statement Order**:  The Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

1.49    **Disputed Claim**:  Any Claim against the Debtor, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, or is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.50    **Disputed Claim Amount**:  The lesser of (a) the liquidated amount set forth in the proof of claim filed with the Bankruptcy Court relating to a Disputed Claim, (b) if the Bankruptcy Court has estimated such Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, the amount of a Disputed Claim as estimated by the Bankruptcy Court, and (c) the amount of such Disputed Claim allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Court, or zero, if such Disputed Claim is disallowed by the Bankruptcy

Court pursuant to such section, in either case, regardless of whether the order or judgment allowing or disallowing such Claim has become a Final Order; provided, however, that, in the event that such Claim has been disallowed, but the order of disallowance has not yet become a Final Order, the Bankruptcy Court may require the Disbursing Agent to reserve Cash in an amount equal to the amount that would be attributed to such Claim if it were an Allowed Claim, or a lesser amount, to the extent that the Bankruptcy Court, in its sole and absolute discretion, determines such reserve is necessary to protect the rights of such holder under all of the facts and circumstances relating to the order of disallowance and the appeal of such holder from such order.

1.51    **Effective Date**:  The earlier to occur of (a) the first (1st) Business Day following the Confirmation Date that (i) the conditions to effectiveness of the Plan set forth in Section 24.1 of the Plan have been satisfied or otherwise waived in accordance with Section 24.2 of the Plan and (ii) the effectiveness of the Confirmation Order shall not be stayed and (b) such other date following the Confirmation Date that the Debtor and the Governor, in their joint and absolute discretion, designate.

1.52    **Entity**:  A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee, or any other entity.

1.53    **Final Order**:  An order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; and if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

1.54    **Franchise**:  The governmental authority to conduct pari-mutuel wagering with respect to thoroughbred horse racing at the Racetracks.

1.55    **Franchise Agreement**:  The agreement to be entered into between the State of New York and New NYRA, relating to the Franchise and the operation of the Racetracks during the period from the Effective Date up to and including the twenty-fifth anniversary thereof, as the same may be extended, pursuant to the Racing Law, as the same may be amended.

1.56    **Governor**:  The current Governor of the State of New York.

1.57    **Insurance Carrier**:  Any entity providing insurance coverage to NYRA pursuant to an Insurance Policy.

1.58    **Insurance Policy**:  Any and all polices between NYRA and an Insurance Carrier, providing insurance coverage, including, but not limited to general liability, workmen's compensation, and automobile coverage, as of the Effective Date.

1.59    **Insured Litigation Claim**:  Any Claim or cause of action against the Debtor for which the claimant or the Debtor may recover under an Insurance Policy.

1.60    **IRC**:  The Internal Revenue Code of 1986, as amended from time to time.

1.61    **IRS**:  The Internal Revenue Service, an agency of the United States Department of Treasury.

1.62    **IRS Claim**:  Any and all Claims of the IRS or proofs of claim filed by the IRS against the Debtor in the Chapter 11 Case; provided, however, that, to the extent that any portion of any Claim of the IRS or proofs of the claim filed by the IRS against the Debtor in the Chapter 11 Case includes any Claim for a fine, penalty, forfeiture, multiple, exemplary or punitive damages or otherwise not predicated upon compensatory damages and that is subject to subordination in accordance with section 726(a)(4) of the Bankruptcy Code or otherwise, such portion of any such Claim or proof of claim shall be considered and treated as a Penalty Claim pursuant to Article XII of the Plan.

1.63    **Legislation**:  The Legislation passed by the Assembly and the State Senate, A. 9998 and S. 6950, respectively, and enacted into law on February 19, 2008 as Chapter 18 of the Laws of 2008.

1.64    **Legislature**:  The Assembly and the State Senate.

1.65    **Lien**:  Any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.66    **New NYRA**.  The not-for-profit entity to be created on or prior to the Effective Date, named The New York Racing Association, Inc., pursuant to Section 402 of the New York Not-for-Profit Corporation Law and as authorized by Chapter 18 of the Laws of 2008.

1.67    **New NYRA By-laws**:  The by-laws of New NYRA, which by-laws shall be in form and substance satisfactory to the State of New York.

1.68    **New NYRA Certificate of Incorporation**:  The Certificate of Incorporation of New NYRA, which certificate of incorporation shall be in form and substance satisfactory to the State of New York.

1.69    **New York State Tax Claim**:  The Claim of the New York State Department of Tax and Finance which, to the extent an Allowed Claim, shall be treated as an Allowed Priority Tax Claim in an amount no greater than One Million Four Hundred Four Thousand Dollars ($1,404,000.00).

1.70    **NYRA**:  The New York Racing Association Inc. and any of its officers, trustees, or employees acting on its behalf.

1.71    **NYRA Board of Trustees**:  The Board of Trustees of NYRA.

1.72    **NYRA Equity Interest**:  Any Equity Interest in the Debtor represented by duly authorized, validly issued and outstanding shares of common stock or any interest or right to convert into such an equity interest or acquire any equity interest of the Debtor which was in existence immediately prior to or on the Petition Date.

1.73    **Oversight Board**:  The New York State Non-Profit Racing Association Oversight Board.

1.74    **Pataki**:  George E. Pataki, the former Governor of the State.

1.75    **PBGC**:  Pension Benefit Guaranty Corporation.

1.76    **PBGC Claim**:  A Claim asserted by the PBGC with respect to one or more of the Benefit Plans.

1.77    **Penalty Claim**:  Any Claim for a fine, penalty, forfeiture, multiple, exemplary or punitive damages or otherwise not predicated upon compensatory damages and that is subject to subordination in accordance with section 726(a)(4) of the Bankruptcy Code or otherwise, as determined pursuant to a Final Order.

1.78    **Person**:  A "person" as defined in section 101(41) of the Bankruptcy Code.

1.79    **Petition Date**:  November 2, 2006, the date on which NYRA filed its voluntary petition for relief commencing the Chapter 11 Case.

1.80    **Plan**:  This Modified Third Amended Plan of Debtor Pursuant to Chapter 11 of the United States Bankruptcy Code, as the same is amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

1.81    **Priority Claim**:  A Priority Non-Tax Claim or a Priority Tax Claim, as the case may be.

1.82    **Priority Non-Tax Claim**:  Any Claim against the Debtor, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.83    **Priority Tax Claim**:  Any Claim of a governmental unit against the Debtor entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.84    **Pro Rata Share**:  With respect to Claims (a) within the same Class, the proportion that a Claim bears to the sum of all Claims, as the case may be, within such Class,

and (b) among all Classes, the proportion that a Class of Claims bears to the sum of all Claims, as the case may be.

1.85     **Proponent**:  The Debtor in Possession.

1.86     **Racetracks**:  Aqueduct, Belmont and Saratoga.

1.87     **Racing Law**:  The New York Racing, Pari-Mutuel Wagering and Breeding Law (L.1982, c. 865, § 1, as amended, Consolidated Laws Chapter 47-A), as in effect from time to time.

1.88     **Record Date**:  The date or dates established by the Bankruptcy Court in the Confirmation Order for the purpose of determining the holders of Allowed Claims and Equity Interests entitled to receive distributions pursuant to the Plan.

1.89     **Reorganized Debtor**:  The Debtor, from and after the Effective Date.

1.90     **Reorganized Debtor By-Laws**:  The by-laws of the Reorganized Debtor, which by-laws shall be in form and substance satisfactory to the Creditors' Committee and the State of New York.

1.91     **Reorganized Debtor Certificate of Incorporation**:  The certificate of incorporation of the Reorganized Debtor, which certificate of incorporation shall be in form and substance satisfactory to the Creditors' Committee and the State of New York.

1.92     **Reorganized Debtor Plan Administration Agreement**:  The agreement prescribing the powers, duties and rights of the Reorganized Debtor Plan Administrator in administering the Plan, which agreement shall be in form and substance satisfactory to the Creditors' Committee and the State of New York.

1.93     **Reorganized Debtor Plan Administrator**:  Irene M. Posio, retained, as of the Effective Date, by the Reorganized Debtor as the employee responsible for, among other things, the matters described in Section 23.2 hereof.

1.94     **Saratoga**:  Saratoga Race Course.

1.95     **Schedules**:  The respective schedules of assets and liabilities, the list of Equity Interests, and the statements of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended on or prior to the Effective Date.

1.96     **Secured Claim**:  A Claim, other than a State Claim, against the estate of the Debtor (a) secured by a Lien on Collateral or (b) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Collateral or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or as otherwise agreed to, in writing, by (1) the Debtor and the holder of such Claim, subject to the consent of the State of New York and the Creditors' Committee, or (2) the

Reorganized Debtor and the holder of such Claim, subject to the consent of the State of New York, as the case may be; provided, however, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case, the Class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.97  **State Claims**:  The Claims of the State of New York or proofs of claim filed by the State of New York against the Debtor in the Chapter 11 Case that are set forth on Exhibit A hereto.

1.98  **State Motion to Dismiss**:  The Motion of the State of New York and the New York State Non-Profit Racing Association Oversight Board to Dismiss Debtor's Chapter 11 Case Pursuant to 28 U.S.C. § 1334 and Section 109(d) of the Bankruptcy Code, dated December 29, 2006.

1.99  **State Senate**:  The Senate of the State of New York.

1.100  **State Settlement Agreement**:  The agreement, together with all exhibits annexed thereto, to be entered into between, among others, the State of New York and the Debtor setting forth the compromise and settlement between NYRA and the State of New York of, among other matters, (a) the State Motion to Dismiss, (b) the Adversary Litigation, and (c) the State Claims.

1.101  **Supplemental DIP Loan**:  The advance in the amount of Nine Million Dollars ($9,000,000.00) made by the State of New York to NYRA pursuant to the DIP Agreements.

1.102  **Transferred Property**:  All right, title and interest in such property as will be described in the State Settlement Agreement.

1.103  **Unsecured Claim**:  Any Claim against the Debtor, other than an Administrative Expense Claim, a Secured Claim, a Priority Non-Tax Claim, a Priority Tax Claim, an Insured Litigation Claim, a State Claim, an IRS Claim, a PBGC Claim or a Penalty Claim.

1.104  **VLT**:  A video lottery terminal.

1.105  **VLT Revenues**:  The amount of total revenue wagered on VLTs at Aqueduct after payout for prizes won in accordance with Section 1612(b) of the New York State Tax Law.

1.106  **UCC**:  The Uniform Commercial Code, as in effect from time to time in the State of New York.

1.107  **Other Definitions**:  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.  Unless otherwise specified, (a) all section, schedule or exhibit references in the Plan are to the respective section

in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**

**COMPROMISE AND SETTLEMENT
OF DISPUTES WITH STATE; WAIVER OF CLAIMS**

2.1 **Compromise and Settlement**: The Plan incorporates, and is expressly conditioned upon effectiveness of, a proposed compromise and settlement of certain issues disputed by the Debtor and the State of New York including, among other issues, resolution of (a) the State Motion to Dismiss, (b) the Adversary Litigation and (c) the State Claims, which, upon the Effective Date, shall be binding upon the Debtor, the State of New York, all Creditors, and all Entities receiving any payments or other distributions under the Plan. The terms of the compromise and settlement shall be explicitly set forth in the State Settlement Agreement. Without limiting the foregoing, the following describes certain of the principal provisions of the State Settlement Agreement, but the terms of the State Settlement Agreement shall in all events control to the extent of any inconsistencies between the Plan, the Confirmation Order, or any other document, and the State Settlement Agreement; provided, however, that, under all circumstances, the State Settlement Agreement shall be consistent with the provisions of the Plan and the Confirmation Order with respect to the Benefit Plans:

(a) Franchise Agreement: On the Effective Date, the State of New York and New NYRA shall enter into the Franchise Agreement providing New NYRA with the Franchise for the period from the Effective Date up to and including the twenty-fifth anniversary thereof, as the same may be extended.

(b) Resolution of the Adversary Litigation: On the Effective Date, the Adversary Litigation shall be dismissed with prejudice.

(c) Resolution of the Motion to Dismiss: On the Effective Date, the Motion to Dismiss shall be withdrawn with prejudice.

(d) Transfer of the Racetracks and Other Property: On the Effective Date, to the extent set forth in the State Settlement Agreement, and in consideration for and reliance upon (1) the Effective Date payment and waiver of distributions as set forth in Section 2.1(e) of the Plan and (2) the support payments and capital expenditure advances to be made by the State of New York or the operator of video lottery terminals at Aqueduct, as the case may be, to New NYRA over the term of the Franchise, all as set forth in the Racing Law and the State of New York Tax Law, each as may be modified by the Legislation and the Chapter Amendment, NYRA shall convey all of its right, title and interest in, to and under the Racetracks and the

11

other Transferred Property to the State of New York, an affiliate or agency of the State of New York or a public benefit corporation incorporated by the State of New York.

(e)  State and NYRA Obligations:  On the Effective Date, (1) the State shall pay to the Debtor One Hundred Five Million Dollars ($105,000,000.00), for services and expenses required relating to payments for capital works or purposes, including, without limitation, payments for the purpose of acquisition of clear title to the Racetracks and the other Transferred Property and which the Debtor shall use to satisfy Allowed Claims and for the support of New NYRA's racing operations and the satisfaction of New NYRA's operating expenses, including, without limitation, the payment of New NYRA's pension plan obligations in accordance with Section 10.1(a) of the Plan, and (2) except to the extent set forth in the State Settlement Agreement, the State of New York shall waive for the benefit of the Debtor's estate and the Reorganized Debtor any entitlement to receive distributions pursuant to the Plan with respect to the Allowed State Claims, except with respect to the New York State Tax Claim; provided, however, that, in the event that the amounts projected to be paid by the State of New York and set forth in the State Settlement Agreement are in excess of amounts necessary to satisfy Allowed Claims or to support the Reorganized Debtor's or New NYRA's operating and capital expenditure obligations, as the case may be, such amounts shall be reduced to the extent appropriate.

(f)  Sale of Ancillary Property:  From and after the Effective Date, the Reorganized Debtor shall use its reasonable best efforts to sell the Ancillary Property in one or more arms' length transaction(s) and the proceeds thereof shall be applied in the following order of priority: (i) first, to pay any amounts due, payable or outstanding in respect of the Allowed IRS Claim, (ii) second, and without duplication of any amounts accounted for in clause (i) above, to reimburse NYRA or New NYRA, as the case may be, with respect to payments made on account of the Allowed IRS Claim prior to the sale of the Ancillary Property, in an amount necessary to satisfy the Allowed IRS Claim, together with all interest which may have accrued on the Allowed IRS Claim, and (iii) upon the written agreement of the State and the Reorganized Debtor, the balance, if any, to be used to (1) fund the operating expenses of NYRA or New NYRA, as the case may be, or support the racing operations of NYRA or New NYRA, as the case may be, and (2) repay the Supplemental DIP Loan at any time prior to the maturity thereof.

## ARTICLE III

## PROVISIONS FOR PAYMENT OF
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

3.1  **Administrative Expense Claims**:  On the later to occur of (a) the Effective Date and (b) the date on which an Administrative Expense Claim shall become an Allowed Claim, the Reorganized Debtor shall (i) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim or (ii) satisfy and discharge such Allowed Administrative Expense Claim in accordance with the terms and conditions of the agreements with respect thereto; provided, however, that, in the event that in the ordinary course of business New NYRA satisfies an Administrative Expense Claim relating to NYRA's racing operations or otherwise, the Reorganized Debtor shall

reimburse New NYRA to the extent of such payment and the obligation hereunder shall constitute an Administrative Expense Claim.

3.2 **Professional Compensation and Reimbursement Claims**: All Entities awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 328, 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on or as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Bankruptcy Court order allowing such Claim becomes a Final Order.

3.3 **Payment of Priority Tax Claims**: On the Effective Date, each holder of an Allowed Priority Tax Claim, including, without limitation, the holder of the New York State Tax Claim and the IRS Claim, respectively, shall be entitled to receive distributions in an amount equal to the full amount of such Allowed Priority Tax Claim. At the option and discretion of the Debtor, which option shall be exercised, in writing, on or prior to the commencement of the Confirmation Hearing, such payment shall be made by the Reorganized Debtor or New NYRA, as the case may be, (a) in full, in Cash, on the Effective Date, (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in full, in Cash, in equal quarterly installments, commencing on the first (1st) Business Day following the Effective Date and ending on the fifth (5th) anniversary of the commencement of the Chapter 11 Case, together with interest accrued thereon at a rate (i) to be determined by the Bankruptcy Court and set forth in the Confirmation Order or (ii) with respect to the Allowed IRS Claim, set forth in Section 6621 of the IRC, or (c) by mutual agreement of the holder of such Allowed Priority Tax Claim, including, without limitation, the holder of the New York State Tax Claim and the IRS Claim, respectively, and the Debtor or Reorganized Debtor, as the case may be; provided, however, that, in the event that net proceeds from the sale of the Ancillary Property are insufficient to satisfy the Allowed IRS Claim, from and after the sale of the Ancillary Property, New NYRA shall be responsible for all subsequent payments in connection with the Allowed IRS Claim.

3.4 **Debtor in Possession Financing**: On the Effective Date, except with respect to the Supplemental DIP Loan (which shall be repaid to the extent provided in accordance with Amendment No. 1), (a) the Debtor shall be relieved of any and all obligation to satisfy or otherwise repay the outstanding DIP Obligations, and (b) all Liens and other encumbrances granted pursuant to the DIP Orders with respect to property and interests in property claimed by the Debtor shall be deemed released.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS,

Claims and Equity Interests are classified as follows:

4.1 Class 1 - Priority Non-Tax Claims

4.2 Class 2 - Secured Claims

4.3     Class 3 - Unsecured Claims

4.4     Class 4 - Insured Litigation Claims

4.5     Class 5 - State Claims

4.6     Class 6 - PBGC Claims

4.7     Class 7 – Intentionally Left Blank

4.8     Class 8 - Penalty Claims

4.9     Class 9 - NYRA Equity Interests

# ARTICLE V

## PROVISION FOR TREATMENT OF PRIORITY NON-TAX CLAIMS (CLASS 1)

5.1     **Payment of Allowed Priority Non-Tax Claims (Class 1)**:  Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtor, each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Priority Non-Tax Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is possible.

# ARTICLE VI

## PROVISION FOR TREATMENT OF SECURED CLAIMS (CLASS 2)

6.1     **Payment of Allowed Secured Claims (Class 2)**:  On the Effective Date, each holder of an Allowed Secured Claim shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Secured Claim one of the following distributions:  (a) the payment of such holder's Allowed Secured Claim in full, in Cash; (b) the sale or disposition proceeds of the property securing any Allowed Secured Claim to the extent of the value of their respective interests in such property; (c) the surrender to the holder or holders of any Allowed Secured Claim of the property securing such Claim; or (d) such other distributions as shall be necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code.  The manner and treatment of each Secured Claim shall be determined by the Debtor and transmitted, in writing, to each holder of a Secured Claim at least five (5) days prior to the commencement of the Confirmation Hearing.

# ARTICLE VII

## PROVISION FOR TREATMENT OF UNSECURED CLAIMS (CLASS 3)

7.1     **Payment of Allowed Unsecured Claims (Class 3)**:  On the Effective Date, each holder of an Allowed Unsecured Claim shall receive on account of such Allowed

Unsecured Claim distributions of Cash in an amount equal to one hundred percent (100%) of such holder's Allowed Unsecured Claim, plus interest accrued thereon during the period from February 1, 2008 up to and including the Effective Date, at the rate of four percent (4%) per annum.

## ARTICLE VIII

### PROVISION FOR TREATMENT OF INSURED LITIGATION CLAIMS (CLASS 4)

8.1 **Assumption of Insurance Policies**: On the Effective Date, the Debtor shall assume and, to the extent that the applicable coverage period extends beyond the Effective Date, assign to New NYRA, all Insurance Policies and each Insurance Carrier providing insurance pursuant to an Insurance Policy shall continue to provide coverage to the Reorganized Debtor and New NYRA, as the case may be, in accordance with the terms and provisions set forth therein, including, without limitation, remitting to New NYRA such amounts of excess collateral or surplus premiums as permitted in accordance with the Insurance Policy.

8.2 **Treatment of Allowed Insured Litigation Claims (Class 4)**: Unless otherwise mutually agreed upon by the holder of an Allowed Insured Litigation Claim and the Debtor or the Reorganized Debtor, as the case may be, each holder of an Allowed Insured Litigation Claim shall be entitled, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Insured Litigation Claim, to proceed with the liquidation of such Claim, including any litigation pending as of the Petition Date and seek recovery from the applicable Insurance Carrier; provided, however, that, except with respect to the payment of a deductible which may be required thereunder, under no circumstances, shall the holder of an Allowed Insured Litigation Claim recover from the Reorganized Debtor or New NYRA any amounts with respect to such Allowed Insured Litigation Claim.

## ARTICLE IX

### PROVISION FOR TREATMENT OF STATE CLAIMS (CLASS 5)

9.1 **Treatment of Allowed State Claims (Class 5)**: On the Effective Date, and except as provided pursuant to the terms of the State Settlement Agreement, (a) all State Claims shall be deemed Allowed State Claims and (b) each holder of an Allowed State Claim, other than the holder of the New York State Tax Claim, shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Allowed State Claims under the Plan. To the extent that proofs of claim filed by the State of New York in this Chapter 11 Case exceed the amounts set forth in the State Settlement Agreement, all such State Claims shall be deemed amended without any further act or action to conform to the amounts set forth in the State Settlement Agreement.

# ARTICLE X

## PROVISIONS FOR TREATMENT OF PBGC CLAIMS (CLASS 6)

10.1    **Treatment of PBGC Claims (Class 6)**:

(a)    On the Effective Date, New NYRA shall assume the Benefit Plans and the obligations of contributing sponsor under ERISA, including, without limitation, the obligation to make required minimum funding contributions pursuant to such Benefit Plans and ERISA.

(b)    On or prior to the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, shall make payments into the Benefit Plans identified in Sections 1.23(a)-(e) of the Plan, which, together with all such payments made during the period from the Petition Date up to and including the Effective Date, shall be attributable to, and in amount sufficient to satisfy funding deficiencies for the years ended on or prior to December 31, 2007 (the accumulated amount of required minimum funding contributions for such years).

(c)    On the Effective Date, and upon assumption of the Benefit Plans and payment of the amounts set forth in Section 10.1(b) of the Plan, the PBGC Claims shall be deemed withdrawn, without prejudice to the rights of the PBGC or the true party in interest with respect to the Benefit Plans to take such action as may be appropriate with respect to future actions or inactions, as the case may be, of New NYRA, as contributing sponsor, with respect to the Benefit Plans, during the period subsequent to the Effective Date in accordance with the terms and provisions of the Benefit Plans and ERISA.

# ARTICLE XI

# INTENTIONALLY LEFT BLANK

# ARTICLE XII

## PROVISIONS FOR TREATMENT OF PENALTY CLAIMS (CLASS 8)

12.1    **Treatment of Allowed Penalty Claims (Class 8)**:  Commencing on the Effective Date, and provided that Allowed Unsecured Claims have been paid in full, each holder of an Allowed Penalty Claim shall be entitled to receive on account of such Allowed Penalty Claim distributions of Cash in an amount equal to one hundred percent (100%) of such holder's Allowed Penalty Claim.

# ARTICLE XIII

## PROVISION FOR TREATMENT OF NYRA EQUITY INTERESTS (CLASS 9)

13.1    **Treatment of NYRA Equity Interests (Class 9)**:  On the Effective Date, (a) the NYRA Equity Interests shall be cancelled and the holders of NYRA Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such NYRA Equity Interests under the Plan and (b) three new shares of NYRA Equity

Interests shall be issued to the Reorganized Debtor Plan Administrator who shall hold such non-certified and non-transferable shares of common stock as custodian for the directors of the Reorganized Debtors.

**ARTICLE XIV**

**PROVISIONS FOR TREATMENT OF
DISPUTED CLAIMS UNDER THE PLAN**

14.1 **Objections to Claims; Prosecution of Disputed Claims**: The Reorganized Debtor shall object to the allowance of Claims or Equity Interests filed with the Bankruptcy Court with respect to which they dispute liability, priority or amount, including, without limitation, objections to Claims which have been assigned and the assertion of the doctrine of equitable subordination with respect thereto. All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that the Reorganized Debtor (within such parameters as may be established by the Board of Directors of the Reorganized Debtor) shall have the authority to file, settle, compromise or withdraw any objections to Claims or Equity Interests. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than thirty (30) days following the Effective Date or such later date as may be approved by the Bankruptcy Court. The Reorganized Debtor shall consult with the State of New York on a regular basis concerning the investigation, prosecution and proposed settlement of Disputed Claims and shall provide written reports to the State of New York on a quarterly basis regarding the status of Disputed Claims.

14.2 **Estimation of Claims**: Unless otherwise limited by an order of the Bankruptcy Court, the Reorganized Debtor may at any time request the Bankruptcy Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

14.3 **Payments and Distributions on Disputed Claims:**

(a) Disputed Claims Reserve: From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final

Order, the Disbursing Agent shall reserve and hold in escrow for the benefit of each holder of a Disputed Claim, Cash, in an amount equal to the distributions which would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the Disputed Claim Amount, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtor. Any Cash reserved and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of Section 19.1 of the Plan and computing any additional amounts to be paid in Cash in the event the Disputed Claim ultimately becomes an Allowed Claim. Such Cash reserved for the benefit of holders of Disputed Claims shall be either (x) held by the Disbursing Agent, in an interest-bearing account or (y) invested in interest-bearing obligations issued by the United States Government, or by an agency of the United States Government and guaranteed by the United States Government, and having (in either case) a maturity of not more than thirty (30) days, for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order.

(b)     <u>Allowance of Disputed Claims</u>: At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Disbursing Agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan together with any interest which has accrued on the amount of Cash (net of any expenses, including any taxes of the escrow, relating thereto), but only to the extent that such interest is attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order but in no event more than sixty (60) days thereafter. The balance of any Cash previously reserved shall be included in Cash and used for future calculations of Cash to holders of Allowed Penalty Claims, if any, in accordance with the terms and provisions of the Plan.

(c)     <u>Tax Treatment of Escrow</u>: Subject to the receipt of contrary guidance from the IRS or a court of competent jurisdiction (including the receipt by the Disbursing Agent of a private letter ruling requested by the Disbursing Agent, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent, or a condition imposed by the IRS in connection with a private letter ruling requested by the Debtor), the Disbursing Agent shall (i) treat the escrow as one or more discrete trusts (which may be composed of separate and independent shares) for federal income tax purposes in accordance with the trust provisions of the IRC (Sections 641 et seq.) and (ii) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All holders of Allowed Claims shall report, for tax purposes, consistent with the foregoing.

14.4     **Funding of Escrow's Tax Obligation**: If the reserve created in accordance with Section 14.3(a) hereof has insufficient funds to pay any applicable taxes imposed upon it or its assets, subject to the other provisions contained herein, the Reorganized Debtor shall advance to the escrow the funds necessary to pay such taxes (a "<u>Tax Advance</u>"), with such Tax

Advances repayable from future amounts otherwise receivable by the escrow pursuant to Section 14.3 or otherwise. If and when a distribution is to be made from the escrow, the distributee will be charged its pro rata portion of any outstanding Tax Advance (including accrued interest). If a cash distribution is to be made to such distributee, the Disbursing Agent shall be entitled to withhold from such distributee's distribution the amount required to pay such portion of the Tax Advance (including accrued interest). If such cash is insufficient to satisfy the respective portion of the Tax Advance, the distributee shall, as a condition to receiving such other assets, pay in cash to the Disbursing Agent an amount equal to the unsatisfied portion of the Tax Advance (including accrued interest). Failure to make such payment shall entitle the Disbursing Agent to reduce and permanently adjust the amounts that would otherwise be distributed to such distributee to fairly compensate the Disputed Claims reserve created in accordance with Section 14.3(a) of the Plan for the unpaid portion of the Tax Advance (including accrued interest).

## ARTICLE XV

## PROSECUTION OF CLAIMS HELD BY THE DEBTOR

15.1 **Prosecution of Claims**: From and after the Effective Date, the Reorganized Debtor shall, as a representative of the estate of the Debtor, litigate any claims or causes of action that constituted assets of the Debtor or Debtor in Possession, including, without limitation, any avoidance or recovery actions under sections 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and any other causes of action, rights to payments of claims that may be pending on the Effective Date or instituted by the Debtor or Debtor in Possession thereafter, to a Final Order, and the Reorganized Debtor may compromise and settle such claims, upon approval of the Bankruptcy Court. The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be remitted to the Disbursing Agent for distribution in accordance with the terms and provisions of the Plan.

## ARTICLE XVI

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
## REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

16.1 **Impaired Classes to Vote**: Each holder of a Claim or Equity Interest in an impaired Class, not otherwise deemed to have accepted or rejected the Plan in accordance with Section 16.2 of the Plan, shall be entitled to vote separately to accept or reject the Plan.

16.2 **Acceptance by Class of Creditors**: An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

16.3 **Cramdown**: In the event that any impaired Class of Claims or Equity Interests shall fail to accept, or be deemed to reject, the Plan in accordance with section 1129(a) of the

Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan.

## ARTICLE XVII

## IDENTIFICATION OF CLAIMS AND EQUITY
## INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

17.1    **Impaired and Unimpaired Classes**:  Claims in Classes 1, 2 and 6 are not impaired under the Plan.  Claims and Equity Interests in Classes 3, 4, 5, 8 and 9 are impaired under the Plan.

17.2    **Impaired Classes Entitled to Vote on Plan**:  The Claims in Classes 3, 4, 5 and 8 are impaired and receiving distributions pursuant to the Plan and are therefore entitled to vote to accept or reject the Plan.

17.3    **Equity Interests Deemed to Reject**:  The NYRA Equity Interests in Class 9 are not entitled to receive any distributions or retain their NYRA Equity Interests pursuant to the Plan, and are deemed to reject the Plan and are not entitled to accept or reject the Plan.

17.4    **Controversy Concerning Impairment**:  In the event of a controversy as to whether any Class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE XVIII

## PROVISIONS FOR THE ESTABLISHMENT
## AND MAINTENANCE OF DISBURSEMENT ACCOUNTS

18.1    **Establishment of Disbursement Account(s)**:  On or prior to the Effective Date, the Debtor shall establish one or more segregated bank accounts in the name of the Reorganized Debtor as Disbursing Agent under the Plan, which accounts shall be trust accounts for the benefit of Creditors pursuant to the Plan and utilized solely for the investment and distribution of Cash consistent with the terms and conditions of the Plan.  On or prior to the Effective Date, and periodically thereafter, the Debtor shall deposit into such Disbursement Account(s) all Cash of the Debtor, less amounts reasonably determined by the Debtor or the Reorganized Debtor, as the case may be, as necessary to fund the ongoing implementation of the Plan and operations of the Reorganized Debtor.

18.2    **Maintenance of Disbursement Account(s)**:  Disbursement Account(s) shall be maintained at one or more domestic banks or financial institutions of the Reorganized Debtor's choice having a shareholder's equity or equivalent capital of not less than One Hundred Million ($100,000,000.00).  The Reorganized Debtor shall invest Cash in Disbursement Account(s); provided, however, that sufficient liquidity shall be maintained in such account or accounts to (a) make promptly when due all payments upon Disputed Claims if, as and when they become Allowed Claims and (b) make promptly when due the other payments provided for in the Plan.

# ARTICLE XIX

## PROVISIONS REGARDING DISTRIBUTIONS

19.1     **Distributions of Cash**:  On or as soon as practicable after the Effective Date, the Disbursing Agent shall (1) distribute to each holder of an Allowed Administrative Expense Claim, Allowed Priority Claim, Allowed Secured Claim and Allowed Unsecured Claim (or cause to be distributed to each holder of a Disputed Claim in accordance with Section 14.3 of the Plan), an amount equal to such holder's Allowed Claim (plus such additional amounts as may be due and owing in accordance with the provisions of Section 7.1 of the Plan) and (2) distribute to each holder of an Allowed Penalty Claim, an amount equal to such holder's Allowed Claim; provided, however, that, in the event that prior to the Effective Date, the Debtor or the applicable Insurance Carrier has resolved an Insured Litigation Claim and payment thereof remains outstanding as of the Effective Date, distributions with respect to such Allowed Insured Litigation Claims shall be made on the later to occur of (a) the date agreed upon by the Insurance Carrier and the respective Creditor and (b) the date set forth in this Section 19.1; and, provided, further, that, under no circumstances, shall any distributions be made, or caused to be made, on account of Allowed Penalty Claims until such time as Allowed Unsecured Claims have been paid in full, or provisions have been made to pay such Claims in full.

19.2     **Timeliness of Payments**:  Any payments or distributions to be made pursuant to the Plan shall be deemed to be timely made if made within fifteen (15) days after the dates specified in the Plan.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

19.3     **Distributions by the Disbursing Agent**:  All distributions to be made pursuant to the Plan shall be made by the Disbursing Agent at the direction of the Reorganized Debtor. The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Persons entitled to receive the same.  The Disbursing Agent shall not hold an economic or beneficial interest in such property.

19.4     **Manner of Payment under the Plan**:  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Reorganized Debtor shall be made, at the election of the Reorganized Debtor, by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payments shall be made to a holder of an Allowed Claim until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

19.5     **Delivery of Distributions**:  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in Section 19.4 of the Plan, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on proofs of claim filed by such holders, or at the last known address of such a holder if no proof of claim is filed or if the Debtor has been notified in writing of a change of address.

19.6    **Undeliverable Distributions**:

(a)    Holding of Undeliverable Distributions:  If any distribution to any holder is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such holder unless and until the Reorganized Debtor is notified, in writing, of such holder's then-current address.  Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable.  All Entities ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind.  Nothing contained in the Plan shall require the Reorganized Debtor to attempt to locate any holder of an Allowed Claim.

(b)    Failure to Claim Undeliverable Distributions:  On or about the six (6) month anniversary of the Effective Date, the Reorganized Debtor shall file a list with the Bankruptcy Court setting forth the names of those Entities for which distributions have been made hereunder and have been returned as undeliverable as of the date thereof.  Any holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a distribution within one (1) year from and after the Effective Date shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan against New NYRA, the Reorganized Debtor or its property or the State of New York.  In such case, any consideration held for distribution on account of such Claim shall revert to the Reorganized Debtor for redistribution to holders of Allowed Claims in accordance with the provisions of Section 19.1 hereof.

19.7    **Compliance with Tax Requirements**:  The Reorganized Debtor shall comply with all applicable tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

19.8    **Time Bar to Cash Payments**:  Checks issued by the Reorganized Debtor on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (a) the first (1st) anniversary of the Effective Date or (b) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Reorganized Debtor shall retain all monies related thereto for the sole purpose of redistribution to holders of Allowed Claims in accordance with the terms and provisions hereof or, upon payment in full of Allowed Claims, to New NYRA.

19.9    **Distributions After Effective Date**:  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made in accordance with the terms and provisions of Section 19.1 of the Plan.

19.10   **Setoffs**:  The Reorganized Debtor may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim (except the New York State Tax Claim) and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature the Debtor or the Reorganized Debtor may hold against the holder of such Allowed Claim; <u>provided, however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, Debtor in Possession or the Reorganized Debtor of any such claims, rights and causes of action that the Debtor, Debtor in Possession or the Reorganized Debtor may possess against such holder; and, <u>provided, further</u>, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment.

19.11   **Allocation of Plan Distributions Between Principal and Interest**:  To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

## ARTICLE XX

## CREDITORS' COMMITTEE

20.1   **Dissolution of the Creditors' Committee**:  On the first (1st) Business Day thirty (30) days following the Effective Date, and provided that payments to holders of Allowed Unsecured Claims have been made in accordance with Section 19.1 of the Plan, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the reorganization, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith; <u>provided, however</u>, that, notwithstanding the foregoing, the existence of the Creditors' Committee may be extended pursuant to an order of the Bankruptcy Court, upon an application by the Creditors' Committee, and notice and a hearing, and the showing of good and sufficient cause therefor.

## ARTICLE XXI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

21.1   **Assumption and Assignment of Executory Contracts and Unexpired Leases**: On the Effective Date, the Debtor shall (a) assume all executory contracts and unexpired leases that have not expired by their own terms on or prior to the Confirmation Date, which have not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which are

not the subject of a motion to assume the same pending as of the Confirmation Date; <u>provided</u>, <u>however</u>, that any executory contracts or unexpired leases set forth on Exhibit B to the Plan shall be deemed rejected by the Debtor in Possession on the Confirmation Date and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and (b) assign all executory contracts and unexpired leases not otherwise rejected to New NYRA.

21.2    **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**: Any monetary amounts required as cure payments on each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or upon such other terms and dates as the parties to such executory contracts or unexpired leases otherwise may agree.  In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption arises, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be subject to the jurisdiction of the Bankruptcy Court and made following the entry of a Final Order resolving such dispute.

21.3    **Rejection Damage Claims**:  If the rejection of an executory contract or unexpired lease by the Debtor in Possession hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, or its properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon attorneys for the Debtor on or before thirty (30) days after the latest to occur of (a) the Confirmation Date, and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease.

21.4    **Indemnification and Reimbursement Obligations**:  For purposes of the Plan, (a) the obligations of the Debtor to indemnify and reimburse its directors or officers that were directors or officers, respectively, on or prior to the Petition Date shall be assumed by the Reorganized Debtor and (b)  indemnification obligations of the Debtor arising from services as officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims to the extent previously authorized by a Final Order.

21.5    **Termination of Benefit Plans**:  Notwithstanding anything contained in the Plan to the contrary, from and after the Confirmation Date, the Debtor, the Reorganized Debtor or New NYRA, as the case may be, shall be entitled to terminate any and all Benefit Plans in accordance with the terms and provisions of the documents and instruments relating thereto and applicable law; <u>provided</u>, <u>however</u>, that, until the termination of any such Benefit Plan, the Debtor, the Reorganized Debtor or New NYRA, as the case may be, shall (i) continue to perform any and all of their administrative obligations thereunder and (ii) with respect to the defined Benefit Plans, continue to make minimum contributions and pay Pension Benefit Guaranty Corporation insurance premiums, including, without limitation, those payments set forth in Article X of the Plan.

# ARTICLE XXII

## RIGHTS AND POWERS OF DISBURSING AGENT

22.1 **Exculpation**: From and after the Effective Date, the Disbursing Agent, in its capacity as such, shall be exculpated by all Persons and Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent. No holder of a Claim or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the Plan or for implementing the provisions of the Plan.

22.2 **Powers of the Disbursing Agent**: The Disbursing Agent shall be empowered to (a) take all steps and execute all instruments and documents necessary to effectuate the Plan, (b) make distributions contemplated by the Plan, (c) comply with the Plan and the obligations thereunder, and (d) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

22.3 **Fees and Expenses Incurred From and After the Effective Date**: Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, made by the Disbursing Agent, shall be paid in Cash by the Reorganized Debtor without further order of the Bankruptcy Court within fifteen (15) days of submission of an invoice by the Disbursing Agent. In the event that the Reorganized Debtor objects to the payment of such invoice for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after good faith negotiation, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by the Reorganized Debtor.

# ARTICLE XXIII

## THE REORGANIZED DEBTOR PLAN ADMINISTRATOR

23.1 **Appointment of Reorganized Debtor Plan Administrator**: On the Effective Date, except as otherwise provided herein or in the documents executed and delivered in connection with the consummation of the transactions contemplated herein, compliance with the provisions of the Plan shall be the responsibility of the Reorganized Debtor Plan Administrator, an employee of the Reorganized Debtor, (subject to the supervision of the Board of Directors of the Reorganized Debtor) pursuant to and in accordance with the provisions of the Plan and the Reorganized Debtor Plan Administration Agreement.

23.2     **Responsibilities of the Reorganized Debtor Plan Administrator**:  In accordance with the Reorganized Debtor Plan Administration Agreement, the responsibilities of the Reorganized Debtor Plan Administrator shall include (a) facilitating the Reorganized Debtor's prosecution or settlement of objections to and estimations of Claims, (b) prosecution or settlement of claims and causes of action held by the Debtor and Debtor in Possession, (c) calculating and assisting the Disbursing Agent in implementing all distributions in accordance with the Plan, (d) filing all required tax returns and paying taxes and all other obligations on behalf of the Reorganized Debtor from funds held by the Reorganized Debtor, (e) periodic reporting to the Bankruptcy Court, of the status of the Claims resolution process, distributions on Allowed Claims and prosecution of causes of action, and (f) such other responsibilities as may be vested in the Reorganized Debtor Plan Administrator pursuant to the Plan, the Reorganized Debtor Plan Administration Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

23.3     **Powers of the Reorganized Debtor Plan Administrator**:  The powers of the Reorganized Debtor Plan Administrator shall, without any further Bankruptcy Court approval in each of the following cases, include (a) the power to invest funds in, and withdraw, make distributions and pay taxes and other obligations owed by the Reorganized Debtor from funds held by the Reorganized Debtor Plan Administrator and/or the Reorganized Debtor in accordance with the Plan, (b) the power to compromise and settle claims and causes of action on behalf of or against the Reorganized Debtor, and (c) such other powers as may be vested in or assumed by the Reorganized Debtor Plan Administrator pursuant to the Plan, the Reorganized Debtor Plan Administration Agreement or as may be deemed necessary and proper to carry out the provisions of the Plan.

23.4     **Compensation of the Reorganized Debtor Plan Administrator**:  In addition to reimbursement for actual out-of-pocket expenses incurred by the Reorganized Debtor Plan Administrator, the Reorganized Debtor Plan Administrator shall be entitled to receive reasonable compensation for services rendered on behalf of the Reorganized Debtor in an amount and on such terms as may be reflected in the Reorganized Debtor Plan Administration Agreement.

23.5     **Termination of Reorganized Debtor Plan Administrator**:  The duties, responsibilities and powers of the Reorganized Debtor Plan Administrator shall terminate pursuant to the terms of the Reorganized Debtor Plan Administration Agreement.

## ARTICLE XXIV

## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF
## THE PLAN; IMPLEMENTATION PROVISIONS

24.1     **Conditions Precedent to Effective Date of the Plan**:  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)      **Entry of the Confirmation Order**:  The Clerk of the Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the

Debtor, the State of New York and the Creditors' Committee, and the Confirmation Order shall have become a Final Order.

(b)     Execution of Actions Relating to the Granting of the Franchise:  The State of New York shall have granted the Franchise to New NYRA, effective as of the Effective Date, for the period from the Effective Date up to and including the twenty-fifth (25th) anniversary thereof.

(c)     Execution of the Franchise Agreement:  The State of New York and New NYRA shall have entered into the Franchise Agreement.

(d)     Execution of the State Settlement Agreement:  The State of New York and the Debtor shall have entered into the State Settlement Agreement, which agreement shall have become effective in accordance with its terms.

(e)     Execution of Documents; Other Actions:  All other actions and documents necessary to implement the Plan and/or required by the Racing Law shall have been effected or executed, including, without limitation, adoption of the Code of Conduct, the New NYRA By-laws and the New NYRA Certificate of Incorporation and the execution and delivery of one or more leases for the leasing of the Racetracks (as may be more specifically defined in such leases) and other property to New NYRA for the length of the Franchise.

(f)     Allowed Claim Threshold:  The aggregate amount of Allowed Unsecured Claims shall be equal to or less than Twenty Six Million Dollars ($26,000,000.00).

(g)     IRS Claim:  The IRS Claim shall be allowed or estimated for purposes of allowance in accordance with section 502(c) of the Bankruptcy Code in an amount equal to or less than Sixteen Million Dollars ($16,000,000.00).

(h)     Chapter Amendment:  The Chapter Amendment shall (1) have been passed by the Legislature and enacted into law and (2) not adversely impact the economics provided to New NYRA in accordance with the Legislation, including, without limitation, the provisions of Section 1612, Subdivisions (f)(1) and (2) of the tax law relating to the four percent (4%) of VLT Revenues and three percent (3%) of VLT Revenues, respectively, to be paid to New NYRA and used by New NYRA for capital expenditures and the support of New NYRA's racing operations, respectively.

(i)     Effective Date:  The Effective Date shall occur on or before June 30, 2008.

24.2   **Waiver of Conditions Precedent**:  To the extent practicable and legally permissible, each of the conditions precedent in Section 24.1 hereof, may be waived, in whole or in part, by the Debtor with the consent of the Governor and the Creditors' Committee.  Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Bankruptcy Court.

# ARTICLE XXV

## RETENTION OF JURISDICTION

25.1     **Retention of Jurisdiction**:  The Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relates to the following:

(a)     to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

(b)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including, without limitation, the State Settlement Agreement, unless any such agreements or documents contain express enforcement and dispute resolution provisions to the contrary, in which case, such provisions shall govern;

(c)     to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor prior to or after the Effective Date;

(d)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)     to hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(g)     to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)     to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)    except to the extent provided in Section 25.1(b) of the Plan or with respect to matters regarding the regulation of New NYRA pursuant to the Racing Law, to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(k)    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)    except to the extent provided in Section 25.1(b) of the Plan or with respect to matters regarding the regulation of New NYRA pursuant to the Racing Law, to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

(m)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)    to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(o)    to enter a final decree closing the Chapter 11 Cases;

provided, however, that the foregoing is not intended to (1) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (2) impair the rights of an Entity to (i) invoke the jurisdiction of a court, commission or tribunal with respect to matters relating to a governmental unit's police and regulatory powers and (ii) contest the invocation of any such jurisdiction; provided, however, that the invocation of such jurisdiction, if granted, shall not extend to the allowance or priority of Claims or the enforcement of any money judgment against the Debtor or the Reorganized Debtor, as the case may be, entered by such court, commission or tribunal, and (3) impair the rights of an Entity to (i) seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d) and (ii) contest any request for the withdrawal of reference in accordance with 28 U.S.C. § 157(d).

## ARTICLE XXVI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

26.1    **Modification of Plan**:  The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules in the event any amendment or modification would materially adversely affect the substance of the economic and governance provisions set forth in the Plan, including, without limitation, Article II of the Plan, to amend or modify the Plan or any exhibits to the Plan at any time prior to the entry of the Confirmation Order.  Upon entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of a Claim that has accepted

the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

26.2 **Revocation or Withdrawal**:

(a) The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtor.

(b) If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtor or any other Entity, including the State of New York, or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceedings involving the Debtor or the State.

# ARTICLE XXVII

# PROVISION FOR MANAGEMENT

27.1 **Reorganized Debtor Directors**: From and after the Effective Date, the board of directors of the Reorganized Debtor shall consist of C. Steven Duncker, Charles E. Hayward and Patrick L. Kehoe. Except as set forth herein, provisions regarding members of the Reorganized Debtor Board of Directors shall be as set forth in the Reorganized Debtor By-laws.

27.2 **New NYRA Directors**: From and after the Effective Date, and as set forth in the Racing Law, New NYRA's Board of Directors shall be comprised of twenty-five (25) members: (a) fourteen (14) of whom shall be elected by the NYRA Board of Trustees or the nominating committee of the NYRA Board of Trustees, and (b) in accordance with the provisions and the procedures set forth in the Legislation, seven (7) of whom shall be appointed by the Governor, and two (2) of whom shall be selected by each of the Speaker of the Assembly and the Temporary President of the State Senate. Except as set forth herein, provisions regarding members of the New NYRA Board of Directors and voting requirements of the Board of Directors shall be as set forth in the New NYRA By-laws.

27.3 **New NYRA Committees**: From and after the Effective Date, the majority of the Board of Directors may appoint committees, including an executive committee, and the existence and powers and responsibilities of such committees shall be consistent with those set forth in the New NYRA By-laws. Without limiting the foregoing, the Board of Directors shall establish (a) a compensation committee to fix salary guidelines, such guidelines to be consistent with the operation of other first class thoroughbred racing operations in the United States, (b) a finance committee to review annual operating and capital budgets for each of the Racetracks, (c) a nominating committee to nominate any new directors to be designated by the Debtor or New NYRA to replace the existing directors designated by the Debtor or New NYRA, and (d) an executive committee (the "Executive Committee"); provided, however, that each of the aforementioned committees shall include at least one of the Directors designated by the

Governor and, with respect to the Executive Committee, at least one of the Directors designated by each of the Speaker of the Assembly and the Temporary President of the State Senate.

27.4    **New NYRA Officers**:  From and after the Effective Date, New NYRA shall determine all officers of New NYRA.

# ARTICLE XXVIII

## ARTICLES OF INCORPORATION AND BY-LAWS OF THE DEBTOR; CORPORATE ACTION

28.1    **Amendment of Articles of Incorporation/Charter**:  On or prior to the Effective Date, the Debtor shall file (a) the Reorganized Debtor Certificate of Incorporation and the Reorganized Debtor By-laws and (b) such documents with the State as are necessary to cause the creation of New NYRA, under the general supervision of the Office of the Attorney General, pursuant to and as set forth in the Racing Law or such other applicable law.

28.2    **Corporate Action**:  On the Effective Date, the adoption of the Reorganized Debtor Certificate of Incorporation and the Reorganized Debtor By-laws shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtor or the Reorganized Debtor.  Subject to the Racing Law, the cancellation of all Equity Interests, employment agreements, and other matters provided under the Plan involving the corporate structure of the Reorganized Debtor or corporate action by the Reorganized Debtor shall be deemed to have occurred, be authorized, and shall be in effect without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtor or the Reorganized Debtor.  Without limiting the foregoing, from and after the Confirmation Date, the Debtor, and the Reorganized Debtor may take any and all actions deemed appropriate in order to consummate the transactions contemplated herein; provided, however, that, from and after the Effective Date, the actions of the Reorganized Debtor shall be limited to the administration of the actions contemplated or required by the Plan to be performed by the Debtor or the Reorganized Debtor, including, without limitation, the resolution of Claims, distributions in respect thereof and the sale of the Ancillary Property.

28.3    **Corporate Contribution**:  Except with respect to the payment of Allowed Priority Tax Claims which may be assumed by New NYRA, upon (a) the liquidation of the Reorganized Debtor's assets, including, without limitation, the Ancillary Property, and (b) the payment in full of Allowed Claims, the Board of Trustees of the Reorganized Debtor shall take any and all action as to cause the dissolution of the Reorganized Debtor, including, without limitation, contributing all of the Reorganized Debtor's Cash and Cash Equivalents to New NYRA.

# ARTICLE XXIX

## MISCELLANEOUS PROVISIONS

29.1 **Title to Assets**: Except as otherwise provided in the Plan or the State Settlement Agreement, on the Effective Date, (a) title to (i) the Ancillary Property shall vest in the Reorganized Debtor, (ii) all assets and properties (other than the Ancillary Property, the Racetracks and the other Transferred Property) shall vest in New NYRA free and clear of all Liens, Claims, encumbrances and interests and in accordance with section 1141 of the Bankruptcy Code (subject to the transfers contemplated by the State Settlement Agreement), and (iii) the Racetracks and the other Transferred Property shall vest in the State of New York, an affiliate or agency of the State of New York, or a public corporation incorporated by the State of New York free and clear of all Liens, Claims, encumbrances and interests and in accordance with sections 1123 and 1141 of the Bankruptcy Code and (b) the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor and the Debtor in Possession except as provided in the Plan. On the Effective Date, New NYRA and the State of New York shall enter into one or more leases providing for the lease of the Racetracks (as may be more specifically defined in such leases) and other property to New NYRA.

29.2 **Discharge of Debtor**: Except as otherwise provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Case and (c) the final distribution made to holders of Allowed Claims in accordance with Article XIX of the Plan, all Claims, other than the Debtor's obligations pursuant to the Supplemental DIP Loan, against and NYRA Equity Interests in the Debtor and Debtor in Possession, shall be discharged and released in full; provided, however, that, the Bankruptcy Court may, upon request by the Reorganized Debtor, and notice and a hearing, enter an order setting forth that such Claims and NYRA Equity Interests shall be deemed discharged and released on such earlier date as determined by the Bankruptcy Court. All Persons and Entities shall be precluded from asserting against the Debtor, the Debtor in Possession, their successors or assigns, including, without limitation, the Reorganized Debtor, their agents and employees, or their respective assets, properties or interests in property, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefor were known or existed prior to the Confirmation Date regardless of whether a proof of Claim or NYRA Equity Interest was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim is an Allowed Claim.

29.3 **Injunction on Claims**: **Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Persons or Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan against**

the Debtor, the Debtor in Possession or the Reorganized Debtor, the Debtor's estate, New NYRA, the State of New York or their respective properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, the Debtor in Possession or the Reorganized Debtor, the Debtor's estate, New NYRA, the State of New York or their respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Debtor in Possession or the Reorganized Debtor, New NYRA, the State of New York or against their respective property or interests in property, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, the Debtor in Possession or the Reorganized Debtor, New NYRA, the State of New York or against their respective property or interests in property with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan; provided, however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided, further, that, except in connection with a properly filed proof of claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery from the Debtor, the Debtor in Possession or the Reorganized Debtor or their respective property or interests in property with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power.  Such injunction (y) shall extend to all successors of the Debtor and Debtor in Possession, the State of New York and the Creditors' Committee and its members, and their respective properties and interests in property; provided, however, that such injunction shall not extend to or protect members of the Creditors' Committee and their respective properties and interests in property for actions based upon acts outside the scope of service on the Creditors' Committee, and (z) is not intended, nor shall it be construed, to extend to the assertion, the commencement or the prosecution of any claim or cause of action against any present or former member of the Creditors' Committee and their respective properties and interests in property arising from or relating to such member's pre-Petition Date acts or omissions.

29.4    **Term of Existing Injunctions or Stays**:  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 29.15 of the Plan or such other Final Order of the Bankruptcy Court.

29.5    **Limited Release of Directors, Officers and Employees**:  No claims of the Debtor's estate against its present and former officers, directors, employees, consultants and agents and arising from or relating to the period prior to the Petition Date are released by this Plan.  As of the Effective Date, the Debtor and the Debtor in Possession shall be deemed to have waived and released its present and former directors, officers, employees, consultants and

agents who were directors, officers, employees, consultants or agents, respectively, at any time during the Chapter 11 Case, from any and all claims of the Debtor's estate arising from or relating to the period from and after the Petition Date; provided, however, that this provision shall not operate as a waiver or release of (a) any Person (i) named or subsequently named as a defendant in any action commenced by or on behalf of the Debtor in Possession, and (ii) adjudicated or subsequently adjudicated by a court of competent jurisdiction to have engaged in acts of dishonesty or willful misconduct detrimental to the interests of the Debtor or (b) any claim (i) with respect to any loan, advance or similar payment by the Debtor to any such person, (ii) with respect to any contractual obligation owed by such person to the Debtor, (iii) relating to such person's knowing fraud; and, provided, further, that the foregoing is not intended, nor shall it be construed, to release any of the Debtor's claims that may exist against the Debtor's directors and officers liability insurance.

29.6    **Exculpation**:  The Debtor, the Reorganized Debtor, New NYRA, the State of New York, the Creditors' Committee, and any of their respective directors, officers, officials, employees, members, attorneys, consultants, advisors and agents (acting in such capacity), shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions of this Section 29.6 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

29.7    **Preservation of Rights of Action**:  Except as otherwise provided in the Plan, or in any contract, instrument, release of other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain sole and exclusive authority to enforce any claims, rights or causes of action that the Debtor, the Debtor in Possession or its chapter 11 estate may hold against any Entity, including any claims, rights or causes of action arising under sections 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

29.8    **Injunction on Actions:  Except as provided in the Plan, as of the Effective Date, all non-Debtor entities are permanently enjoined from commencing or continuing in any manner, any action or proceeding, whether directly, derivatively, on account of or respecting any claim, debt, right or cause of action of the Debtor, the Debtor in Possession or the Reorganized Debtor which the Debtor, the Debtor in Possession or the Reorganized Debtor, as the case may be, retain sole and exclusive authority to pursue in accordance with Section 15.1 of the Plan or which has been released pursuant to the Plan, including, without limitation, pursuant to Sections 2.1 and 29.5 of the Plan; provided, however, that, except as provided in Section 29.3 of the Plan, such injunction is not intended, nor shall it be construed to, apply to any proceeding not involving property of the Debtor's estate that a non-Debtor Entity may bring against another non-Debtor Entity.**

29.9 **Payment of Statutory Fees**:  All fees payable pursuant to section 1930 of title 28 of the United States Code, and, if applicable, any interest payable pursuant to section 3717 of title 31 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or thereafter as and when they become due and owing.

29.10 **Retiree Benefits**:  From and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, New NYRA shall assume and pay all retiree benefits (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, and for the duration of the period during which the Debtor has obligated itself to provide such benefits; provided, however, that New NYRA may modify such benefits to the extent permitted by applicable law.

29.11 **Post-Effective Date Fees and Expenses**:  From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, retain such professionals and pay the reasonable professional fees and expenses incurred by the Reorganized Debtor related to implementation and consummation of the Plan without further approval from the Bankruptcy Court.

29.12 **Severability**:  If, prior to the Confirmation Date, any term or provision of the Plan shall be held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor and the State of New York, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

29.13 **Governing Law**:  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New York, without giving effect to principles of conflicts of laws.

29.14 **Notices**:  All notices, requests, and demands to or upon the Debtor, the Debtor in Possession or the Reorganized Debtor to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

The New York Racing Association Inc.
Aqueduct Racetrack
110-00 Rockaway Boulevard
Jamaica, New York 11417
Attention:  Chief Financial Officer
Telephone:  (718) 641-4700

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attention:  Brian S. Rosen, Esq.
Telephone:  (212) 310-8000

29.15 **Closing of Case**:  The Reorganized Debtor shall, promptly upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.

29.16 **Section Headings**:  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

29.17 **Exemption from Transfer Taxes**:  Pursuant to section 1146(a) of the Bankruptcy Code, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the sale of the Ancillary Property, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

29.18　**Inconsistencies**:  To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.

Dated: New York, New York
　　　April 28, 2008

　　　　　　　　　　　　　　　　　The New York Racing Association Inc.


　　　　　　　　　　　　　　　By: _____/s/ C. Steven Duncker_____
　　　　　　　　　　　　　　　　　　Name:　C. Steven Duncker
　　　　　　　　　　　　　　　　　　Title:　Chairman



WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000



By: _____/s/ Brian S. Rosen_____
　　　Name: Brian S. Rosen

Attorneys for Debtor and
Debtor in Possession

**EXHIBIT A**

**LIST OF STATE CLAIMS**

| Claimant | Claim No. | Claim Amount |
|---|---|---|
| New York State Dept. of Labor | 242 | $442,727.96 |
| Racing and Wagering Board | 490 | $199,918.37 |
| New York State Division of the Lottery | 491 | $6,133,479.45 |
| NYSUDC, d/b/a Empire State Development Corp. | 492 | $5,022,765.88 |
| NYSUDC, d/b/a Empire State Development Corp. | 621 | $8,551,140.50 |
| Oversight Board | 622 | $76,173,000.00 |
| State of New York | 623 | $61,243,855.00 |
| New York State Dept. of Environmental Conservation | 638 | $5,200.00 |
| New York State Dept. of Taxation and Finance | 665 | $1,238,575.99 |
| New York State Dept. of Taxation and Finance | 674 | $1,403,837.11 |
| New York State Dept. of Taxation and Finance | 675 | $1,403,837.11 |

# EXHIBIT B

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

| Name and Mailing Address of Other Parties to Lease or Contract | Date Entered and Description of Contract or Lease |
|---|---|
| **Tishman Construction Corporation of New York**<br>666 Fifth Avenue<br>New York, New York 10103-0256 | Agreement, dated March 1, 2006, between NYRA and Tishman Construction Corporation of New York for construction management services at Aqueduct Racetrack in connection with the renovation and construction of a new Video Lottery Terminal Operation and related base building modifications. |
| **VVA, LLC**<br>117 East 31st Street<br>New York, New York 10016 | Agreement, dated December 22, 2005, between NYRA and VVA, LLC to provide project management services to NYRA in connection with the construction of NYRA's Video Lottery Terminal facility at Aqueduct Racetrack. |