**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
*In re:*                   :
                         :
THE NEW YORK RACING ASSOCIATION :   Chapter 11
INC.,                    :
                         :   Case No. 06-12618 (JLG)
                         :
               *Debtor.*     :
-------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER GRANTING REARGUMENT AND**
**ADHERING TO ITS NOVEMBER 2015 ORDER GRANTING IN PART AND DENYING**
**IN PART GETNICK & GETNICK LLP'S MOTION FOR PROTECTIVE ORDER**

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Brian S. Rosen, Esq.

*Attorneys for The New York Racing Association, Inc.*

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
<u>By:</u>    Andrew B. Eckstein, Esq.

-and-

GETNICK & GETNICK LLP
521 Fifth Avenue
33rd Floor
New York, New York 10175
By:    Michael E. Getnick, Esq.
        *Of Counsel*
        (Admitted *Pro Hac Vice*)

*Attorneys for Getnick & Getnick LLP*

**JAMES L. GARRITY, JR.**
**United States Bankruptcy Judge**

### *Introduction*

In this reopened Chapter 11 case, and in connection with the prosecution of its Motion to

Clarify (defined below), The New York Racing Association, Inc. ("New NYRA") sought

discovery from Getnick & Getnick LLP ("G&G"), the law firm that served as New NYRA's

"special business integrity counsel" until New NYRA terminated that appointment in March

2011.   G&G opposed the discovery and moved this Court for a protective order pursuant to Rule

26(c) of the Federal Rules of Civil Procedure ("FRCP"), as made applicable herein by

Bankruptcy Rules 9014 and 7026 (the "Protection Motion").[1]  On November 24, 2015, the Court

conducted a hearing (the "November 24 Hearing") on the Protection Motion and issued a ruling

from the bench in which it granted the motion in part and denied it in part (the "November 2015

Ruling").[2]  On March 23, 2016, the Court entered an order (the "Protective Order") embodying

the November 2015 Ruling.[3]  New NYRA now contends that this Court erred in granting any

portion of the Protection Motion, and that all of its Discovery Requests should be reinstated in

full and without limitation.   The matter before the Court is New NYRA's motion seeking (i)

reargument of the Protection Motion pursuant to Local Bankruptcy Rule ("LBR") 9023-1 and

Bankruptcy Rule 9023; and (ii) reconsideration of the Protective Order pursuant to FRCP

60(b)(1), as made applicable herein by Bankruptcy Rule 9024 (the "New NYRA Motion").[4]

---

[1]  *See Getnick & Getnick LLP's Motion for Protective Order* [ECF Doc. No. 1180].

[2]  *See* Transcript of November 24 Hearing ("11/24 Tr. ") [ECF Doc. No. 1202].

[3]  *See Order Granting In Part and Denying In Part Motion For Protective Order With Respect to Requests for Production and Interrogatories* [ECF Doc. No.  1203].

[4]  *See Motion of the New York Racing Association, Inc. for Reargument and Reconsideration of Order Partially Granting Getnick & Getnick LLP'S Motion for Protective Order* [ECF Doc. No. 1204].

As discussed below, the Court finds that the New NYRA Motion establishes a sufficient basis for the Court to review its November 2015 Ruling and Protective Order. New NYRA is correct that the Court failed to make specific findings in support of its determination that G&G established cause under Rule 26(c) for the issuance of the Protective Order. Therefore, the Court **GRANTS** reargument on the issues of whether (i) G&G has met its burden under Rule 26(c) to warrant imposition of the Protective Order, and (ii) whether partially granting the Protective Order unfairly prejudices and results in manifest injustice to New NYRA. However, upon reconsideration of those and other matters raised in support of and in opposition to the Protective Motion, for the reasons stated below, the Court adheres to its November 2015 Ruling and the Protective Order, **GRANTING IN PART** and **DENYING IN PART** the Protection Motion.

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2102 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## Background[5]

### *Old NYRA Retains G&G as Special Business Integrity Counsel*

On November 2, 2006, The New York Racing Association Inc. ("Old NYRA") commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. As of the commencement of the case, Old NYRA operated thoroughbred horseracing and pari-mutuel wagering at certain racetracks in New York under New York State franchises (collectively, the

---

[5] The Court recounts the facts only to the extent relevant to the New NYRA Motion. Those facts are not in dispute.

"Franchise") which were scheduled to expire on December 31, 2007. In February 2007, New York State announced a new RFP proposal for the award of the Franchises. In furtherance of its response to the RFP, Old NYRA approached G&G to act as Old NYRA's "special business integrity counsel" and G&G agreed to do so. Pursuant to an application dated July 16, 2007 (the "Application"), which was supported by the Declaration of Neil V. Getnick of G&G, sworn to on July 14, 2007 (the "Getnick Declaration"), Old NYRA sought this Court's authorization to employ and retain G&G as special business integrity counsel in accordance with the terms of a letter agreement, dated July 16, 2007 (the "Retainer Agreement"). *See* Appl. ¶ 18.[6] In part, the Retainer Agreement provides as follows:

> It is the intent of both NYRA and G&G that this Agreement will start on July 25, 2007 (the "Effective Date"), the opening day of the 2007 Saratoga meet, subject to court and/or regulatory approval. The term of this Agreement will be five (5) years starting from the Effective Date (the "Term"), unless NYRA does not maintain a franchise to conduct thoroughbred racing and a license to conduct pari-mutuel wagering in the State of New York (the "Franchise"), in which case the Term will end as of the date NYRA no longer maintains the Franchise.

Retainer Agreement, 2-3. It also provides that G&G will be paid a "monthly retainer and minimum fee for professional services" of $125,000 (the "Monthly Minimum") "to be billed against hourly billings by G&G and persons working under the direction of G&G [including auditors and investigators and other professionals and consultants.]" *Id.* at 2. By order dated September 21, 2007 (the "Getnick Order"),[7] this Court granted the Application and authorized

---

[6] *See Notice of Presentment of Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 9014 of the Federal Rules of Bankruptcy Procedure, Authorizing the Employment of Getnick & Getnick, As Special Business Integrity Counsel, As Of July 25, 2007* [ECF Doc. No. 456]. A copy of the Application is annexed to the notice as Exhibit 1. A copy of the Retainer Agreement is annexed to the Application as Exhibit A.

[7] *See Order, Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, Authorizing the Employment of Getnick & Getnick, as Special Business Integrity Counsel, as of July 25, 2007* [ECF Doc. No. 543].

Old NYRA to employ and retain G&G as "special business integrity counsel," under sections

327(e) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), effective as of July 25,

2007, pursuant to the terms of the Retainer Agreement, with one change.  In response to an

objection filed by the Official Committee of Unsecured Creditors,[8] G&G and Old NYRA agreed

to modify slightly the termination provision in the Retention Agreement.  That modification is

reflected in the Getnick Order which provides, in relevant part, that:

> notwithstanding anything contained in the Application, the Getnick Declaration and
> the Retainer Agreement to the contrary, (a) at any time prior to the entry of a final
> order confirming a chapter 11 plan in NYRA's chapter 11 case (the "Plan"), NYRA
> shall have the right to terminate the Retainer Agreement and G&G's services
> thereunder, without cause and the payment of penalty upon sixty (60) days prior
> written notice to G&G, and (b) upon and after the entry of a final order confirming
> the Plan, the services to be provided pursuant to the Retainer Agreement may only be
> terminated in accordance with the terms and provisions of the Retainer Agreement."

Getnick Order 2-3.

*Under Old NYRA's Chapter 11 Plan New NYRA Secures*
*Racing Franchises and Retains G&G as Special Business Integrity Counsel*

By Order dated April 28, 2008, this Court confirmed Old NYRA's Modified Third

Amended Chapter 11 Plan.[9]  Under that plan, among other things, New NYRA (as successor to

Old NYRA) was awarded the Franchise and Old NYRA assumed the Retainer Agreement and

assigned it to New NYRA.  The plan became effective on September 12, 2008, and by order

dated March 5, 2009, this Court entered the final decree closing Old NYRA's chapter 11 case.[10]

---

[8] *See Objection of the Official Committee of Unsecured Creditors to Debtor's Application for an Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, Authorizing the Employment of Getnick & Getnick, As Special Business Integrity Counsel, As Of July 25, 2007* [ECF Doc. No. 477].

[9] *See Order Confirming Modified Third Amended Plan of Debtor Pursuant to Chapter 11 of the United States Bankruptcy Code* [ECF Doc. No. 1008].

[10] *See Final Decree Closing Debtor's Chapter 11 Case Pursuant to Bankruptcy Code Section 350(a), Bankruptcy Rule 3022 and Local Rule 3022-1* [ECF Doc. No. 1160].

*New NYRA Terminates G&G's Services*

On March 10, 2011, New NYRA terminated G&G's employment as special business

integrity counsel and retained alternative integrity counsel.  G&G maintains that its services were

terminated after G&G had presented New NYRA's senior management and certain members of

its Board of Directors issues raised by two then ongoing integrity investigations undertaken by

G&G, and that G&G's termination had the effect of prematurely ending those investigations. *See*

*Getnick & Getnick LLP's Supplemental Request for Enforcement of This Court's [Getnick*

*Order] and Related Relief* ¶ 3 (the "*Supplemental Request*") [ECF Doc. No. 1178].  Thereafter a

dispute arose with respect to payments allegedly due and owing to G&G under the Retainer

Agreement, and the turnover by G&G of Old NYRA's and New NYRA's files.  Despite the

parties' efforts, they were unable to resolve the dispute.

*New NYRA Files Motion to Clarify To Reopen The*
*Case And Confirm Its Right to Terminate G&G's Services*

Pursuant to a motion, dated April 27, 2012, New NYRA sought to reopen Old NYRA's

chapter 11 case for the limited purpose of clarifying and, if necessary, amending the Getnick

Order, and addressing any claims associated therewith (the "Motion to Clarify").[11]   As discussed

below, in substance, the "clarification" New NYRA seeks is that it was free to terminate G&G's

services when it did so.  On May 21, 2012, G&G consented to the reopening of Old NYRA's

chapter 11 case,[12] and, on May 24, 2012, G&G filed a further response to the relief requested in

---

[11] *See Motion of the New York Racing Association, Inc. for Entry of an Order, Pursuant to Section 350(b) Of the Bankruptcy Code and Rule 5010 of the Federal Rules of Bankruptcy Procedure, Reopening the Chapter 11 Bankruptcy Case for the Limited Purpose of (A) Clarifying and, if Necessary, Amending Order Authorizing The Employment of Getnick & Getnick LLP and (B) Addressing Claims Associated Therewith* [ECF Doc. No. 1167].

[12] *See Getnick & Getnick LLP's Consent to Reopening of the Case and Reservation of All Other Objections to the Pending Motion of The New York Racing Association, Inc.* [ECF Doc. No. 1169].

the Motion to Clarify (the "Further Response").[13]  The Court entered an order reopening the

bankruptcy case on May 31, 2012.[14]

There is no dispute among the parties that the Retainer Agreement gave rise to an

attorney-client relationship governed by New York law between G&G and both Old NYRA and

New NYRA.  In support of the Motion to Clarify, New NYRA maintains that it had an

unqualified right to terminate that relationship since under New York law, "[that] right is read

into all attorney-client agreements, so the fact that the Retainer Agreement and Getnick Order do

not contain explicit language allowing Old NYRA, and now New NYRA, to terminate the

relationship does not bar New NYRA from exercising this right."  Motion to Clarify ¶ 29.  New

NYRA asserts that given its and G&G's conflicting interpretations of the Retainer Agreement

and Getnick Order, this Court should grant the Motion to Clarify by "amending the Getnick

Order to acknowledge New NYRA's right to unilaterally terminate its relationship with G&G."

*Id*.  It says that in doing so, the Court would "provide clarity and avoid future conflict between

New NYRA and G&G."  *Id.*  In support of that motion, New NYRA contends that the Retainer

Agreement  is an attorney-client agreement governed by New York law, and citing *In re*

*Cooperman*, 82 N.Y.2d 465 (N.Y. 1994) and Rule 1.16(b)(3) of the N.Y. Rules of Prof'l

Conduct, 22 N.Y.C.R.R. § 1200 (2009), argues that pursuant to the so-called "discharge rule"

governing attorney-client agreements, it has an unqualified right to terminate the Retainer

---

[13] *See Further Response of Getnick & Getnick LLP ("G&G) To the Motion Of The New York Racing Association,
Inc. ("NYRA") To Re-Open The Case and "Clarify" or "Amend" this Court's [Getnick] Order Approving G&G's
Employment As NYRA's Independent Business Integrity Counsel* [ECF Doc. No. 1172].

[14] *See Order Granting Motion of The New York Racing Association, Inc. for Entry of an Order, Pursuant to Section
350(b) of the Bankruptcy Code and Rule 5010 of the Federal Rules of Bankruptcy Procedure, Reopening the
Chapter 11 Bankruptcy Case for the Limited Purposed of (A) Clarifying and, if Necessary, Amending Order
Authorizing the Employment of Getnick & Getnick LLP and (B) Addressing Claims Associated Therewith* [ECF Doc.
No. 1175].

Agreement, and that such right is read into all attorney-client agreements, even if there is

contract language to the contrary. *Id.* at ¶¶ 29, 32-34. Although New NYRA acknowledges that

a retainer agreement may be excepted from the discharge rule if the attorney entering into such a

contract has changed his position or incurred expense based upon the execution of the retention

agreement, or an attorney is employed under a general retainer for a fixed period of time, *see id.*

at ¶ 35 (quoting *Atkins & O'Brien LLP v. ISS Int'l Serv. Sys., Inc.*, 252 A.D.2d 446, 448 (N.Y.

Sup. Ct. 1998)), it contends that neither exception is applicable in this case. *Id.* New NYRA

argues that the first exception is not implicated "because, given the omnipresence of the

discharge rule, it would have been unreasonable for G&G to rely on the Retainer Agreement and

G&G did not substantially change its position in reliance on the agreement." *Id.* at ¶ 36. It

contends that the second exception is not implicated because, by definition, the Retainer

Agreement is not a general retainer. *Id.* at ¶ 37.[15] New NYRA maintains that the plain language

of the agreement proves that it is not a general retainer because the agreement "does not indicate

that the Monthly Minimum [payable under the agreement] is in exchange for G&G's

availability." *Id.* at ¶ 39. It contends further that "no reference is made to G&G's availability

anywhere in the agreement[]," and that "[a]n agreement that does not clearly indicate that the

fees are in exchange for availability is *not* a general retainer." *Id.* (citation omitted).

### G&G Files Supplement Request to Enforce the Getnick Order

On September 30, 2014, G&G filed it Supplemental Request with the Court to enforce

the Getnick Order. In doing so, among other things, G&G sought payment of all amounts that it

---

[15] New NYRA contends that the three types of retainer "widely recognized by the courts" are: "special retainers, in which the client agrees to pay the attorney a specified fee in exchange for specified services, general retainer, in which fees are given in exchange for availability and hybrid general-special retainer, in which part or all of the 'general retainer' is eventually applied to the bill for services performed." Motion to Clarify at ¶ 37 (citing Lester Brickman & Lawrence A. Cunningham, *Nonrefundable Retainers Revisited*, 72 N.C.L.Rev. 1, 5-6 (Nov. 1993)).

would have earned under the Retainer Agreement had New NYRA not terminated its services. Briefly, in furtherance of the Supplemental Request, G&G contends the Retainer Agreement provided for G&G's retention as independent business integrity counsel for a period of five years effective July 25, 2007, and that pursuant to the Getnick Order "NYRA could terminate G&G's engagement before the expiration of the five-year period in only one circumstance: NYRA's loss of its New York State racing franchise. That circumstance has never occurred." Supplemental Request ¶ 2 (footnote omitted). G&G further contends that the Getnick Order "is unambiguous on its face," and that New NYRA "willfully disobeyed the plains terms of the [Getnick] Order by prematurely terminating G&G's engagement." *Id.* at ¶ 16. In that light, G&G asks this Court to "enforce the [Getnick] Order as written and award G&G the appropriate relief – its unpaid attorney' fees and expenses through the end of the five-year term, as provided in the Retainer Agreement." *Id.* G&G contends that the amounts owed to it under the agreement totals $3,912,703, plus interest. *Id*. at ¶ 17.

### *G&G Opposes the Motion to Clarify*

G&G also opposes the Motion to Clarify arguing that (i) section 206(5) of the New York Racing, Pari-Mutuel Wagering and Breeding Law (the "N.Y. Racing Law"); (ii) that certain Memorandum of Understanding between New York State and Old NYRA dated September 4, 2007 (the "MOU"); (iii) the Retention Agreement, and (iv) the Getnick Order "all contemplate an extraordinary arrangement in which NYRA's independent integrity counsel would retain true independence – that is, an arrangement in which pending investigations could not be cut short by NYRA's termination of counsel at will, in which counsel could impose 'checks and balances' on NYRA's conduct rather than serving as a mere defender and advocate, and in which counsel would have any independent obligation to protects the State's and public's interests." *See* G&G

9

Further Response to Motion to Clarify at ¶ 12.[16]  G&G contends that the Retainer established a "special attorney-client relationship that was not terminable at will." *Id*. at ¶ 13.  It argues that "NYRA sought and obtained its exclusive racing franchise by assuring New York State and the public at large that NYRA's activities would be subject to oversight and investigation by an independent integrity counsel – a special position created by New York law specifically for the holder of the franchises." *Id*. at ¶ 15.  G&G maintains that in doing so "NYRA undertook a public trust" and "violated that trust, as well as this Court's [Getnick] Order by prematurely firing G&G in the midst of two integrity investigations[]" and thereafter "compounded the violation by demanding first the G&G turn over all hard copies and destroy all electronic copies of its final integrity report, and then later that G&G strip itself of all of its files and turn them over the NYRA." *Id*.  G&G asserts further that in or about February 2007, when it agreed to act as Old NYRA's special business integrity counsel, it agreed to do so only after Old NYRA committed to "a fixed term for the retention, with no allowance for early termination, and a monthly retainer and minimum fee to ensure that G&G would have the time and resources to complete long-term investigations and other necessary tasks." *Id.* at ¶ 19.  Moreover, G&G contends that Old NYRA agreed to cooperate fully with G&G and agreed that G&G would have "'maximum independence' in discharging its responsibilities, 'including, but not limited to, interacting with governmental entities and industry regulators, consistent with the underlying counsel relationship between NYRA and G&G.'" *Id.*  Thus, G&G argues that New NYRA cannot rely on *Cooperman* because its engagement was "radically different" from a traditional attorney-client relationship since the engagement: (i) was subject to approval by New York

---

[16] *See Further Response of Getnick & Getnick LLP To the Motion of The New York Racing Association, Inc. [ ] to Re-Open The Case and "Clarify" or "Amend" This Court's 2007 Order Approving G&G's Employment As NYRA'S Independent Business Integrity Counsel* [ECF Doc. No. 1172].

State; (ii) could not be revoked during the five year term; (iii) gave it "maximum independence;" and (iv) required NYRA to "cooperate fully" with G&G. *Id.* at ¶ 49. Moreover, G&G contends that, in any event, *Cooperman* is inapplicable because G&G engagement did not involve a non-refundable fee. *Id.* at n. 7.

### **The Discovery Dispute**

*New NYRA Serves Discovery Requests and G&G Seeks a Protective Order*

On or about January 26, 2015, NYRA served its First Request for Production of Documents from and Interrogatories Directed to Getnick & Getnick LLP (the "Discovery Requests"), consisting of fifteen Requests for Production and eleven Interrogatories.[17] In response, on March 17, 2015, G&G filed the Protection Motion. In support, G&G contends that the only issues before the Court are (i) whether NYRA violated the Getnick Order by terminating G&G's engagement as "independent integrity counsel" and (ii) whether G&G is entitled to enforcement of the Getnick Order as written. G&G argues that those are threshold and potentially dispositive issues of law that can be resolved without discovery. Protection Mot. 1-2, 15. G&G asserts that on the "pretext" that G&G and NYRA had a traditional attorney client relationship, NYRA is abusing the discovery process in an effort to obtain confidential files that it has no right to obtain and to which it had been denied access during G&G's tenure as special business integrity counsel. *Id*. at 2, 15. G&G argues that the Getnick Order "approved a special engagement that differed fundamentally from any traditional attorney-client relationship," and that "G&G was engaged to conduct independent investigations and oversight to ensure NYRA's business integrity." *Id.* It maintains that the unique nature of the relationship was confirmed by the terms of the Getnick Order, specific provisions of the N.Y. Racing Law and the MOU, and

---

[17] A copy of New NYRA's Document Request is annexed as Exhibit A to the Protection Motion.

that "[p]ursuant to those judicial, statutory and contractual authorizations, G&G's engagement involved functions in the public interest that no ordinary attorney performs." *Id.* at 2. G&G asserts that granting NYRA access to the files it has sought through discovery would not only preempt the Court's ability to adjudicate the nature of the relationship among the parties, but also would undermine the proper functioning of an independent business integrity counsel under the Getnick Order and New York State law and place at risk G&G's confidential sources. *Id.* at 15-16. Moreover, G&G contends that NYRA's efforts to take discovery violate public policy since NYRA allegedly has violated the "public trust" in terminating G&G's employment and demanding the turnover of documents. *Id.* G&G also contends that this Court should bar the discovery based upon its inherent power to stay discovery, its power under Fed. R. Civ. P. 26(c) to bar discovery that would impose "annoyance, embarrassment, oppression or undue burden or expense" on the party opposing discovery, and on the grounds that NYRA is judicially estopped from challenging enforcement of the Getnick Order. *Id.* at 16-17.

*New NYRA Objects to Protective Order*

On April 10, 2015, New NYRA filed its objection to the Protection Motion.[18] In support of that objection, New NYRA asserts that the dispute among the parties "is about an attorney-client relationship that more than soured" and "submits that this dispute has narrowed to the parties going in separate directions with what the client, New NYRA, is entitled to receive, its files, and G&G, as former counsel, looking for compensation. *Id.* at ¶ 1.[19] It maintains that there

---

[18] *See Objection of The New York Racing Association, Inc. To Getnick & Getnick LLP's Motion for Protective Order* [ECF Doc. No. 1183].

[19] In support of its contention that it is entitled to conduct discovery, New NYRA asserts that at a telephonic status/settlement conference held on September 30, 2014, Judge Grossman stated that in the absence of a global resolution to the Motion to Clarify and Supplemental Response, G&G would be required to turn over the information and documents sought in the Discovery Requests (at that time discussed but not served) as part of the discovery associated with those matters. NYRA Objection to Protection motion, ¶ 3. G&G denies that Judge

is no merit to the Protection Motion because the Discovery Requests are "reasonably calculated to produce admissible evidence necessary for New NYRA to establish the grounds for relief requested in the Motion to Clarify and, by extension, rebut the assertions set forth in the Supplemental Request." *Id.* at ¶ 16. It contends that the issues to which the Discovery Requests relate "form the core dispute between the parties" and are "whether NYRA had the right to terminate the Retainer Agreement on March 11, 2011 and whether a 'true' attorney/client relationship existed between New NYRA and G&G." *Id.* In addition to denying that those issues are "legal issues" that can be resolved without discovery (*id.* at ¶¶ 17-19), and denying that the Discovery Requests are barred under principles of judicial estoppel (*id.* at ¶¶ 26-28), New NYRA contends that G&G has not met its burden under Rule 26(c)(1) of establishing the "good cause" necessary for such relief. *Id.* at ¶ 20 (citations omitted); *see also id.* at ¶ 21 ("The Protection Motion contains a series of unsubstantiated, conclusory statements regarding the alleged impropriety of the Discovery Requests. None are sufficient as a matter of law to warrant the issuance of a protective order."); *id.* at ¶ at 22 ("G&G fails to identify a protectable interest sufficient to outweigh New NYRA's need for the Discovery Requests in order to allow New NYRA to fully litigate the issues raised in this dispute."). It also denies that granting New NYRA access to G&G's files will "undermine the proper functioning" of the special business integrity counsel since G&G has not served in that role for over five years and "[t]he Discovery Requests were not served until January 2015." *Id.* at ¶ 23. New NYRA further contends that to the extent that G&G's argument was intended to apply to New NYRA's present special business integrity counsel, G&G failed "to make any particular or specific demonstration of fact that such counsel's performance would be undermined." *Id.* Moreover, New NYRA contends that G&G

---

Grossman issued such a directive. The Court does not question the good faith of the parties in taking their respective positons regarding Judge Grossman's directives. However, it will not further consider that argument.

"attempts to transform the fundamental attorney/client relationship, as acknowledged by G&G to

exist, into something mythical where integrity counsel need not answer to anyone, has no client

to serve, and no fiduciary or ethical duties to which it must abide," and that "this is not the basis

for a protective order and is far from reality." *Id*. at ¶ 24. New NYRA also asserts that while

G&G contends that allowing the requested discover will "place at risk G&G's confidential

sources," G&G has failed to provide specific facts identifying the "risks" those sources face and,

in any event, New NYRA is prepared to make exceptions to the Document Requests for "specific

documents prepared by [G&G] with express commitments of confidential to interviewees." *Id.*

at ¶25 (quoting Protective Mot., Exhibit 3).

*The Court Grants the Protection Motion In Part*
*And Denies It In Part and Enters Protective Order*

    The Court decided the Protection Motion on the papers submitted by New NYRA and

G&G, and on November 24, 2015,  issued the November 2015 Ruling granting the motion in

part, and denying it in part.  In that ruling, after reviewing the parties' arguments in support and

in opposition to the Protection Motion (11/24 Tr. 7:8 – 10:3), the Court rejected G&G's judicial

estoppel argument (*id*. at 10:8-11:16; 11:24-12:1), and its contention that the Court could address

the so-called "threshold issues" without granting New NYRA any discovery.  *Id*. at 12:1-2.

However, the Court found that it would limit discovery "based upon the Court's concerns

relating to public policy and undermine [sic] the function of business integrity counsel." *Id.* at

12:3-8.  Thus, the Court denied "the request for a protective order with regard to document

requests and interrogatories that seek information going to the nature of the relationship between

NYRA and G&G." *Id*. at 12:21-24.  However, the Court granted the motion with respect to the

remaining Document Requests and Interrogatories, finding that those "document requests and

interrogatories seek documents and information that go beyond the scope the matters at issue

14

before the Court at this time." *Id*. at 13:1-4.[20]  Thus, the Court found "for that reason alone, [the

Court] will issue a protective order with regard to document requests and interrogatories that go

beyond the scope of the matters before the Court." *Id*. at 13:4-7.  The Court was clear that its

ruling was "without prejudice . . . ." *Id*. at 13:8.

On March 23, 2016, the Court entered the Protective Order.  That order excused G&G

from responding to Requests for Production Nos. 4, 5, 7, & 9-12,[21] and Interrogatories Nos. 4, 5,

6, 8 & 9.[22]  In addition, the Court limited Request for Production No. 8 to "all Documents and

---

[20] As set forth below, for purposes of this motion, the Court has grouped New NYRA's Discovery Request into three categories: Category I, Category II and Category III.  In the November 2015 Ruling, the Court, in effect, denied the Protection Motion as it relates to the Category I Discovery Requests, but granted it as it relates to the Category II and Category III Discovery Requests.

[21] Those requests call for the production of following documents:

> **REQUEST FOR PRODUCTION 4**: All Documents and Communications Concerning G&G's work or activities conducted pursuant to the engagement contemplated by the Retainer Agreement, including, without limitation, all time records of G&G relating to such work or activities.

> **REQUEST FOR PRODUCTION 5**: All Documents and Communications Concerning G&G's interactions with the Oversight Board pertaining to NYRA.

> **REQUEST FOR PRODUCTION 7**: All Documents and Communications Concerning G&G's investigations, reports, inquiries, meetings, or discussions pertaining to the Racetracks and the conduct of business with respect to the Racetracks during the period from July 16, 2007 up to and including the date hereof.

> **REQUEST FOR PRODUCTION 9**: All Documents and Communications Concerning the two integrity investigations which G&G allege were prematurely terminated by NYRA.

> **REQUEST FOR PRODUCTION 10**: All Documents prepared for, or at the direction of, or provided or presented to, the Board of Directors of NYRA.

> **REQUEST FOR PRODUCTION 11**: All Communications between G&G and the Board of Directors of NYRA.

> **REQUEST FOR PRODUCTION 12**: All Documents and Communications Concerning New York State's takeover of NYRA in 2012.

[22] Those interrogatories call for the following information:

> **INTERROGATORY 4**: A detailed description of the services G&G rendered to NYRA or Old NYRA, including, but not limited to, those services provided under the Retainer Agreement.

> **INTERROGATORY 5**: A list of all Documents prepared during the course of G&G's engagement pursuant to the Retainer Agreement, or any other engagement with NYRA or Old NYRA.

15

Communications concerning the drafting or interpretation of the Getnick Order," and Request for Production No. 15 to "all Documents and Communications concerning or prepared in connection with actually engaging, retaining, and employing G&G as independent business integrity counsel by NYRA."  Protective Order at ¶¶ 4, 5.[23]  The Court denied the Protection Motion with respect to each of the remaining Document Requests and Interrogatories.

## The New NYRA Motion

*New NYRA Contends That The*
*Court Erred In Issuing the Protective Order*

New NYRA contends that all of its Discovery Requests should be reinstated "in full and without limitation."  New NYRA Motion ¶ 3.  Accordingly, it asks this Court to: (a) grant reargument of the Protection Motion pursuant to LBR 9023-1 and Bankruptcy Rule 9023 and in particular, as to whether (i) G&G has met its burden under Rule 26(c) to warrant imposition of the Protective Order and (ii) whether partially granting the Protection Motion unfairly prejudices New NYRA and results in manifest injustice; and (b) reconsider entry of the Protective Order FRCP 60(b)(1), made applicable by Bankruptcy Rule 9024, on the grounds that the Court has

---

**INTERROGATORY 6**: Provide a full history of any compensation received from NYRA.

**INTERROGATORY 8**: All facts that support G&G's contention that NYRA ceased to provide information critical to G&G's performance of its job.

**INTERROGATORY 9**: All facts that support G&G's contentions concerning the New York State takeover of NYRA in 2012.

[23] As served, those Document Requests provided, as follows:

**REQUEST FOR PRODUCTION 8**:  Produce all Documents and Communications Concerning the Getnick Order.

**REQUEST FOR PRODUCTION 15:** Produce all Documents and Communications Concerning or prepared in connection with any engagement, retention, or employment of G&G by NYRA or Old NYRA.

16

made a mistake of law and has insufficiently considered certain key arguments in favor of granting the Discovery Requests without limitation.  *Id. at ¶* 15.

As support for its motion New NYRA first contends that G&G failed to establish "cause" under Rule 26(c) to warrant a protective order staying the Discovery Request.  New NYRA Mot. at ¶ 20.  It argues that GG did not provide the Court with specific facts demonstrating the harm or prejudice that it would suffer as a consequence of complying with the Discovery Requests, but instead "proffered vague, unsubstantiated and conclusory statements none of which taken on their own, or in combination with each other are sufficient to satisfy its burden." *Id.* at ¶ 21.  To that end, New NYRA complains that G&G failed to offer "a shred of evidence or even rational conjecture" in support of its assertion that complying with the Discovery Requests would result in a violation of public policy.  *Id.* at ¶ 23.  Further, repeating an argument made in opposition to the Protection Motion, New NYRA denies G&G's contention that compliance with the Discovery Requests would undermine the proper functioning of the business integrity counsel and submits such argument lacks merit because G&G has not served in that capacity since 2011. *Id.* at ¶ 24.  Moreover, in challenging G&G's public policy argument, New NYRA argues -- for the first time -- that "[c]ompliance with the Discovery Requests would be in the public interest as it would liberate critical information regarding the internal operations of New NYRA, an entity subject to public overnight, from a private entity (G&G) whose interest in keeping such information hidden out beyond scrutiny is directly contrary to the public interest." *Id.* at ¶ 23. New NYRA also argues that G&G's refusal to hand over Old NYRA and New NYRA documents cuts against the fundamental nature of the attorney client relationship – a relationship that G&G acknowledged in which the public has an interest.  *Id.*

Next, New NYRA contends that this Court erred in issuing the Protective Order because (i) neither the Protective Order nor the November 2015 Ruling contains any finding that G&G would be harmed by complying with the Discovery Requests, and (ii) because the Court erroneously found that some of the documents requested went beyond the scope of the matters at issue in the Motion to Clarify since such a finding could be made only after the Court found that G&G met its burden under Rule 26(c). *Id.* at ¶¶ 5 n.5, 14, 27. Further, it contends that the Court erred in issuing the Protective Order because the Discovery Requests were specifically tailored to yield the maximum amount of detail regarding the G&G/Old NYRA-New NYRA relationship and limiting the scope of the Discovery Request would unfairly deprive New NYRA of discovery to which it is entitled and any such limitation will preclude it from receiving the evidence it requires to put on its case in connection with the hearing on the Motion to Clarify. *Id.* at ¶ 22. New NYRA contends that this Court's failure to consider the effect that a partial grant of the Protective Order would have on New NYRA's ability to effectively prosecute the Motion to Clarify "creates a result that severely inhibits and prejudices New NYRA's ability to develop a full understanding to the relationship between Old NYRA/New NYRA and G&G and consequently prejudices New NYRA's ability to effectively prosecute the Motion to Clarify." *Id.* at ¶ 26. To buttress that argument, New NYRA includes a list of the Discovery Requests that the Court denied, accompanied by a "clarifying argument as to how denying such request prejudices New NYRA and why this Court should reconsider the Protective Order . . . ." *Id.* at ¶ 15.

*G&G Opposes the Motion*

G&G opposes the motion (the "G&G Objection")[24] arguing, in substance, that the motion is nothing more than a rehash of New NYRA's Objection to the Protection Motion, and that the motion fails to show (i) an intervening change of controlling law; (ii) the availability of new evidence; (iii) the need to correct a clear error or prevent manifest injustice; or (iv) that this Court made a clear error of law or that otherwise insufficiently considers arguments NYRA advanced in opposition to G&G's motion.  G&G Obj. 2.  Moreover, G&G contends that there is no unfair prejudice to New NYRA, let alone "manifest injustice" because the November 2015 Ruling was "without prejudice" to New NYRA's ability to seek discovery "in the event that facts . . . change[], making that information relevant to matters that are before the Court."  *Id.* at 7 (quoting 11/24 Tr. 13:10-11).  *Cf. NEM Re Receivables, LLC v. Fortress Re, Inc.*, 2016 WL 3144390, at *6 (S.D.N.Y. May 5, 2016) (finding no "manifest injustice in denying reconsideration of the Court's holding that the statute of limitations had run on . . . breach of contract claim" because movant had failed to prove in the first instance that it was improperly induced to refrain from filing a timely action).  G&G also contends that the limitation on discovery is especially appropriate under the "proportionality" standard explicitly codified by Rule 26 (as amended in December 2015), and that the New NYRA Motion ignores the proportionality requirement.  *Id.*  New NYRA filed a reply (the "Reply") that focuses primarily on its now expanded rationale for seeking particular discovery, first outlined in the Motion for Reconsideration.[25]

## New NYRA's Request for Reargument Is Granted

---

[24] *See Objection of Getnick & Getnick LLP to Motion of the New York Racing Association, Inc. for Reargument and Reconsideration of Order Partially Granting Getnick & Getnick LLP's Motion for Protective Order*  [ECF Doc. No. 1213].

[25]  *See Reply of the New York Racing Association, Inc. In Support of Motion for Reconsideration and Reconsideration of Order Partially Granting Getnick & Getnick LLP's Motion for Protective Order* [ECF Doc. No. 1214].

New NYRA seeks (i) reargument of the Protection Motion pursuant LBR 9023-1 and

Bankruptcy Rule 9023, and (ii) reconsideration of the Protective Order pursuant to FRCP

60(b)(1) and Bankruptcy Rule 9024.  Under Rule 60(b)(1), the Court "[o]n motion and just terms

. . . may relieve a party . . . from a final judgment, order or proceeding for . . . mistake,

inadvertence, surprise or excusable neglect."  Fed. R. Bankr. P. 60(b)(1).  A "final order" within

the meaning of that rule "is one that 'ends the litigation on the merits and leaves nothing for the

court to do but execute the judgment.'"  *Nelson v. Unum Life Ins. Co. of America*, 468 F.3d 117,

119 (2d Cir. 2006) (*per curiam*) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467

(1978)).  It does not apply to interlocutory discovery orders like the Protective Order.  *See*

*Glendora v. Marshall*, 947 F. Supp. 707, 717, n.3 (S.D.N.Y. 1996) (stating that "Fed.R.Civ.P.

60(b) . . . is not the vehicle for challenging a magistrate judge's discovery ruling.") (citation

omitted);  *Franzon v. Messina Memorial Hospital*, 189 F.R.D. 220, 223 (N.D.N.Y. 1999) ("This

Court's prior Order regarding a discovery issue was interlocutory in nature and, thus, not within

the ambit of Rule 60.").  Still, it is well settled that the Court has inherent power to reconsider a

prior decision at any time before judgment.  *See Dictograph Products Co. v. Sonotone Corp.*,

230 F.2d 131, 134–36 (2d Cir.) (Hand., L.J.), *cert. dismissed per stip.*, 352 U.S. 883 (1956).

Accordingly, "although FRCP 60(b) refers to relief from final orders, it does not restrict the

bankruptcy court's power to reconsider any of its previous orders when equity so requires."

*Meyer v. Lexonx (In re Lennox)*, 902 F.2d 737, 740 (9th Cir. 1990).  "[B]ankruptcy courts, as

courts of equity, have the power to reconsider, modify or vacate their previous orders so long as

no intervening rights have become vested in reliance on the orders.").  *Id.* at 739-40.

Accordingly, the Court will evaluate the motion under both Local Bankruptcy Rule 9023-1 and

FRCP 60(b)(1).

Local Bankruptcy Rule 9023-1(a) provides:

> A Motion for Reconsideration of a court order determining a motion shall be
> served within fourteen (14) days after the entry of the Court's order determining
> the original motion . . . . The motion shall set forth concisely the matters or
> controlling decisions which counsel believes the Court has not considered. No
> oral argument shall be heard unless the Court grants the motion and specifically
> orders that the matter be reargued orally.

S.D.N.Y. LBR 9023-1(a). The standard applicable to motions for reargument is identical to that applicable to motions to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *Hough v. Margulies (In re Margulies)*, Bankr. No. 10-14012, Adv. No. 10-04050, 2012 WL 3782535, at *2 (Bankr. S.D.N.Y. Aug. 31, 2012). Those standards are designed "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988) (quoting *Lewis v. New York Telephone*, No 83 Civ. 7129, 1986 WL 1441, at *1 (S.D.N.Y. Jan. 29, 1986)). "A Rule 59(e) motion is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided." *Cordero v. Astrue*, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) (citation omitted). *See also Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) ("A party seeking reconsideration may neither repeat arguments already briefed, considered and decided, nor advance new facts, issues or arguments not previously presented to the Court." (quotation omitted)). Accordingly, Rule 59(e) motions "must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000).

21

The three grounds that justify relief under Rule 59(e) are: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd.*, 956 F.2 1245, 1255 (2d Cir.), *cert. denied*, 506 U.S. 820 (1992). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Cordero*, 574 F. Supp. 2d at 380 (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). The decision whether to reconsider a previously decided motion "is committed to the sound discretion of the court." *Basse Freres Alimentation Orientale (2013) Inc. v. Frunut Global Commodities L.L.C.*, No. 14 Civ. 0818, 2014 WL 6467001, at *1 (S.D.N.Y. Nov. 18, 2014). *See also McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (stating that a "district court enjoys considerable discretion in granting or denying" a Rule 59(e) motion) (quotation omitted) (citation omitted). The moving party bears the burden of demonstrating that reconsideration is warranted. *In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986) ("A motion based on manifest errors of law or fact will not be granted except on a showing of some substantial reason. The burden is on the movant to demonstrate [the] manifest errors.").

Relief under Rule 60(b)(1) is similarly limited. "Properly applied, [Rule 60(b)] preserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time." *House v. Secretary of Health and Human Services*, 688 F.2d 7, 9 (2d Cir. 1982) (citations omitted). "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). And requests for such relief "'are addressed to the sound discretion of the . . . court . . . .'" *In re Waugh*, 367 B.R. 361, 366 (Bankr. E.D.N.Y. 2007) (quoting *Mendell v.*

*Gollust*, 909 F.2d 724, 731 (2d Cir.1990), *aff'd*, 501 U.S. 115 (1991)).  Relief under Rule 60(b)(1) is available to correct a court's mistake of fact or law, provided the motion is made before the time for appeal expires, *Gey Assocs. Gen. P'ship v. 310 Assocs. (In re 310 Assoc.)*, 346 F.3d 31, 34-35 (2d Cir. 2003).

New NYRA contends that this Court should grant its request to reargue the Protection Motion to correct its clear error in granting that motion without specifying how G&G met its burden of demonstrating cause under Rule 26(c) and without consideration of the unfair prejudice to New NYRA by the issuance of the Protective Order.  Although the Court was clear in the November 2015 Ruling that it had reviewed the pleadings and considered all the arguments in support and in opposition to the Protection Motion, New NYRA is correct that the Court failed to make specific findings related to "good cause" under Rule 26(c) or address New NYRA's claim that it will be unfairly prejudiced if it is denied full access to the information and documents sought in the Discovery Requests.  Thus, the Court finds that it is appropriate to **GRANT** the request for reargument.  However, the Court concludes that further oral argument is not necessary.  *See* LBR 9023-1(a) ("No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be reargued orally.").  .

### On Reconsideration the Court Adheres to Its November 2015 Ruling and Grants In Part and Denies In Part the Protection Motion

FRCP 26 states, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Fed. R. Civ. P. 26(c)(1).  In protecting the moving party, the Court may, among other things "forbid[ ] the disclosure or discovery" or "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters".  *Id*. at 26(c)(1)(A) and (C) (emphasis added).

23

To support the issuance of a protective order under Rule 26(c), the moving party must establish good cause "by particular and specific facts rather than conclusory allegations" (*In re Breeden v. Arkin, Schaffer & Supino (In re Bennett Funding Group, Inc.)*, 2000 LEXIS Bankr. 1563, \*17 (Bankr. N.D.N.Y. 2000) (citation omitted) (entering protective order preventing depositions until other discovery complied with even though neither party set forth sufficient facts and substantive reasons). Additionally, in articulating such particular and specific facts, the movant must set forth 'some injustice, prejudice, or consequential harm that will result' if the protective order is denied." *Id.* (quoting *Blum v. Schlegel*, 150 F.R.D. 38, 41 (W.D.N.Y. 1993). *Loussier v. Universal Music Group*, Inc., 214 F.R.D. 174 (S.D.N.Y. 2003), is instructive as it required a movant for a protective order to set forth "specific examples or articulated reasoning" in attempting to establish cause. *Loussier*, 214 F.R.D. at 177. If good cause is established, the Court "may balance the countervailing interests to determine whether to exercise discretion and grant the [protective] order." *In re Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 455 (N.D.N.Y. 1999).

As noted, in support of their Protection Motion G&G argued that: (i) the Court should deny New NYRA any opportunity to take discovery since certain dispositive "issues of law" could be resolved without discovery; (ii) New NYRA's access to its files not only would preempt the Court's ability to adjudicate the nature of the relationship among the parties but also would undermine the proper functioning of an independent integrity counsel and violate public policy; (iii) the Court should exercise its inherent power to bar the Discovery Requests because responding to them would subject G&G to "annoyance, embarrassment, oppression, or undue burden or expense;" and (iv) New NYRA is judicially estopped from challenging the enforcement of the Getnick Order. In the November 2015 Ruling, the Court rejected G&G's

contentions that (i) the matters in issue could be resolved without discovery; (ii) the Court should

exercise its inherent power to bar the Discovery Request, and (iii) New NYRA was judicially

estopped from challenging enforcement of the Getnick Order. *See* 11/24 Trans. 11:23-12:2.

Neither G&G nor New NYRA seeks reconsideration of those rulings and the Court adheres to

them. *See* discussion *supra*, pp. 14-15.

The matter that is central to the disputes among G&G and New NYRA is the nature of

their attorney-client relationship. *See also* 11/24 Tr. 4:21-24 ("It appears to the Court that the

central issue [underlying] all of the disputes . . . between G&G and [New] NYRA involves the

relationship among those parties prior to [New] NYRA's termination of G&G's services . . . .").

Resolution of that matter not only will inform the Court's assessment of the merits of the Motion

to Clarify, but it will also impact G&G's right to recover unpaid fees and expenses under the

Retainer Agreement and New NYRA's right to access documents and information in G&G's

files that G&G created or obtained during the course of its tenure as special business integrity

counsel to Old NYRA and New NYRA.   As noted, contends, in substance, that the Retainer

Agreement is an attorney-client agreement governed by New York law that is terminable at will,

without financial penalty, in accordance with the so-called "discharge rule" governing New York

attorney-client agreements.  In making that argument, New NYRA relies principally on the plain

language of the agreement and application of New York law to the agreement.  As also noted,

G&G disputes New NYRA's characterization of the Retainer Agreement and maintains, in

substance, that the role of "special business integrity counsel" was created under New York State

law specifically to address issues unique to the racing industry in New York State, and to enable

Old NYRA to emerge from bankruptcy with a new racing franchise agreement awarded to New

NYRA.  G&G argues that when read in light of the MOU, the N.Y. Racing Law, and the Getnick

Order, the Retainer Agreement does not give rise to a traditional attorney-client relationship that was terminable at will by New NYRA.

In reviewing the merits of the New NYRA's request for reconsideration, the Court groups New NYRA's Discovery Requests, as follows: (i) those relating to the negotiation, drafting and execution of the Retainer Agreement (Document Request Nos. 2, 3, 6, 8 (as modified by the Court in the Protective Order), 14, and 15 (as modified by the Court in the Protective Order); Interrogatories 2, 3, and 7) (collectively, "Category I Discovery Requests"); (ii) those relating to the work done, and work product produced, by G&G as special business integrity counsel (Document Request Nos. 4, 7, 9, and 10; Interrogatories 4, 5, 6, and 8) (collectively, "Category II Discovery Requests "); and (iii) those relating to G&G's communications with New NYRA's Board of Directors and communications with or documents provided to The New York State Non-Profit Racing Association Oversight Board (the "Oversight Board"), excluding documents or communications that would fall within Category I (Document Requests 5, 11, and 12; Interrogatory 9) (collectively, "Category III Discovery Requests").[26]

The Category I Discovery Requests call for the production of documents and information that bear on the negotiation and formulation of the terms of the Retainer Agreement and which, if disclosed, do not compromise public policy or the office of special business integrity counsel. They are not at issue in this motion because the Court denied the Protection Motion as to those discovery requests. *See* Protective Order ¶¶ 3, 4, 5.  In contrast, the Category II and Category III Discovery Requests do not address issues relating to the terms and conditions of G&G's

---

[26]   Interrogatory 1 is not included in any of the three foregoing categories as it simply seeks the identities of the persons involved in the preparation of any responses to the Discovery Requests.

retention as special counsel integrity counsel at all.  Rather, they focus on the work performed by

G&G in that capacity subsequent to being retained, and its work product and G&G's

communications with third parties in the course of its retention as special business integrity

counsel.  The documents and information responsive to those Discovery Requests may very well

be relevant to G&G's request for compensation, but the Court will not consider that matter until

it resolves the Motion to Clarify.  The Court finds no merit to New NYRA's assertion that it

should be given access to the fruits of G&G's work to establish the nature of the attorney-client

relationship among the parties in order to rule on the Motion to Clarify.  The parties' attorney-

client relationship is based on and springs from the Retainer Agreement and related documents

which this Court is being asked to interpret as part of the Motion to Clarify.  The work

performed by G&G may not necessarily inform the Court of the scope of G&G's retention.  The

Court again finds that those requests seek documents and information that are beyond the scope

of the issue of the nature of the attorney-client relationship among the parties.  *See* 11/24 Tr.

13:1-7.

New NYRA argues that the Court should not consider whether the information called for

in the Category II and III Discovery Requests is relevant to the resolution of the Motion to

Clarify until it finds that G&G has demonstrated good cause to grant the Protection Motion.  *See*

New NYRA Mot. at ¶ 19.  The Court disagrees.  The showing of "good cause" required under

Rule 26(c) is predicated on the documents or information sought being relevant in the first place

to the dispute being adjudicated.  *Rubin v. Hirschfeld*, No. CIV.3:00CV1657, 2002 WL

32503670, at *2 (D. Conn. Jan. 15, 2002) ("[T]he parties seeking discovery [ ] must first

establish that the discovery sought is relevant to the claims and defenses plead.");  *cf. Penthouse*

*Intern., Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981) ("Where, as here, the

27

documents are relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause."). Thus, "[a]n overly broad request may justify issuance of a protective order precluding irrelevant discovery." *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 24, 27 (D. Conn. 2003).[27]

Moreover, and in any event, G&G has met its burden under Rule 26(c) of establishing "cause" for the issuance of the Protective Order as to the Category II and III Discovery Requests. G&G has demonstrated that the disclosure of documents and information responsive to those requests is contrary to public policy and will undermine the functioning of the office of "special business integrity counsel." New York State's public policy of seeking to ensure that thoroughbred horseracing and pari-mutuel wagering at racetracks in New York State are conducted in a fashion that promotes the public confidence and trust in the credibility and integrity of those activities is well settled and not in dispute. *See* N.Y. Racing Law § 100 ("[I]t is essential to maintain the public confidence and trust in the credibility and integrity of legalized gaming activities."). In furtherance of that policy, "[t]he integrity counsel is an statutorily-created, independent entity that is not subject to direct control by NYRA, but its sole purpose is to "'ensure the integrity of the franchised corporation, its officers and employees, and its operations.'" *Garcia v. New York Racing Ass'n, Inc.*, No. 1:10-cv-01092, 2011 WL 3841524, at *4, n.4 (N.D.N.Y. Aug. 29, 2011) (quoting N.Y. Racing Law § 206(5)). G&G maintains that

---

[27] *Cooks v. Town of Southampton*, No. 13-3460, 2015 WL 1476672 (E.D.N.Y. Mar. 31, 2015), a case cited by New NYRA, is not to the contrary. There, the Plaintiff in a civil rights action sought to compel the defendant to produce certain documents identified by an agent of the defendant during his deposition. The defendant objected to producing the document on relevancy grounds and sought a protective order barring disclosure. The court found that defendant failed to make as sufficient showing of "good cause" to justify issuance of a protective order, but only after finding that plaintiff had met his burden of making a *prima facie* showing that discovery sought was relevant to the matters in issue. 2015 WL 1476672 at *9. New NYRA also cites *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 455 (N.D.N.Y. 1999) as support for its argument. Although *Hasbrouck* discussed relevancy in the context of determining a balancing of the equities after good cause has been demonstrated, rather than as a threshold manner as addressed in *Cooks*, it addressed relevancy as a matter of degree, such as it being *minimally* relevant (*see Hasbrouck*, 187 F.R.D. at 461), not as being wholly irrelevant as the Court does here.

"NYRA undertook a public trust" when it obtained the racing franchise from New York State

since it "sought and obtained its exclusive racing franchise by assuring New York State and the

public at large that NYRA's activities would be subject to oversight and investigation by an

independent business integrity counsel -- a special position created by New York law specifically

for the holder of the franchise."  Protection Mot. 15. As noted, G&G maintains that New NYRA

violated that trust when it terminated G&G's retention in the midst of two integrity

investigations.  It is undisputed, that, as G&G contends, during its tenure as special business

integrity counsel, neither Old NYRA nor New NYRA had access to the documents and

information being sought in the Category II and Category III Discovery Requests.  In this light,

and for purposes of determining whether G&G has shown "cause" for relief under Rule 26(c),

the Court credits G&G's assertions in support of the Protection Motion that disclosure of the

documents and information at issue in those requests potentially will undermine the

independence of integrity counsel and with it the policy goals of promoting public confidence in

the integrity and credibility of racing activities.[28]  It also finds merit to G&G's contention that

disclosure of the requested materials will adversely impact the operation of special business

integrity counsel – even though New NYRA terminated G&G's services more than five years

ago.  Among other things, the Court credits G&G's concerns that granting New NYRA access to

the materials sought in the Category II and III Discovery Requests could have a "chilling"

---

[28] The Court finds no merit to New NYRA's assertion that "[c]ompliance with the Discovery Requests would be in
the public interest as it would liberate critical information regarding the internal operations of New NYRA, an entity
subject to public overnight, from a private entity (G&G) whose interest in keeping such information hidden out
beyond scrutiny is directly contrary to the public interest."  New NYRA Motion ¶ 25.   Indeed, that runs counter to
the public policy considerations reflected in section 100 of the Racing Law the underlie the very nature of section
206(5)'s independent business integrity counsel.

impact on integrity counsel's access to confidential informants, notwithstanding New NYRA's

offers to protect disclosure of their identities.[29]

Having determined that G&G has met its burden of establishing "cause" under Rule 26(c)

to deny the Category II and III Discovery Requests, the Court must balance New NYRA's

countervailing interests in enforcing those requests.  As noted, in asserting that the Court erred in

granting any relief under the Protection Motion, New NYRA provided "clarifying arguments" as

to why the Court should reconsider its November 2015 Ruling and grant New NYRA unfettered

access to the information and documents responsive to the Category II and Category III

Discovery Requests.  *See* Motion for Reconsideration at 15-16.[30]  *See also* NYRA Reply In

---

[29] G&G contends that "[a]llowing access [through discovery] would also expose G&G's confidential sources to risks of retribution and other potential harms."  Protection Mot. 3; *see also id*. at 5, 16.  In responding to the Motion for Reconsideration, G&G expounded on that concern, arguing that

> confidential sources need to know that their identities will be protected to avoid potential retaliation.  The passage of time does not undermine these concerns.  Later revelation of anonymous sources would have a chilling effect on present and future investigations by independent counsel.

Reconsideration Obj. 9.  The Court acknowledges G&G's concern for confidential sources, whether their own, or those of any other independent counsel that may serve as business integrity counsel, and finds its statement in its Objection to be a reasonable articulation of that concern.

[30] Below is a listing of each of the Discovery Requests that the Court denied, accompanied by what New NYRA describes as a clarifying argument as to how denying such request prejudices New NYRA and why this Court should reconsider the Protective Order:

**REQUEST FOR PRODUCTION 4 AND INTERROGATORIES 4, 5, 6, AND 8**:

> These requests are calculated to procure information that would reveal whether G&G's relationship with Old NYRA/New NYRA was of a character and nature that would justify an employment term that was inviolable, even for "cause." Information about the types of work performed by G&G pursuant to the Retainer Agreement will be a key component in establishing whether or not the Old NYRA/New NYRA – G&G relationship was in any way different from a traditional attorney-client relationship. Further, these Discovery Requests were drafted with the aim of discovering facts and information G&G would likely rely on in asserting that any failures on G&G's part were due to the acts and conduct of Old NYRA or New NYRA. Without access to this discovery, New NYRA will be prejudiced in determining the full scope of the G&G/New NYRA relationship for purposes of supporting the Motion to Clarify.  If the Court has any concerns that the scope of the requests extends to services provided prior to entry of the Getnick Order, New NYRA is willing to limit the scope of this request to documents and communications generated between entry of the Getnick Order and the dated of G&G's termination.

**REQUEST FOR PRODUCTION 5**:

G&G's reporting duties are essential to its proper functioning as integrity counsel. If G&G faithfully dispatched its reporting duties as integrity counsel, its reports to the Oversight Board would presumably capture the full scope of its conduct and duties. Additionally, G&G has continuously asserted that any attorney-client relationship was with the Oversight Board and not Old NYRA/New NYRA. . . . Information provided to the Oversight Board is thus important for New NYRA to analyze the strength of this argument in connection with briefing on the Motion to Clarify. Information responsive to this Discovery Request will be invaluable in determining whether the nature of G&G's work was of a type that would justify an inviolable five-year employment term.

**REQUEST FOR PRODUCTION 7**:

This request was reasonably calculated to provide information as to the full range of conduct G&G engaged in while executing its duties as integrity counsel, and consequently, provide further insight into the nature of the relationship between Old NYRA/New NYRA and G&G. As with the other Discovery Requests, this request was drafted with an eye to determining the true nature of the Old NYRA/New NYRA – G&G relationship and to supporting New NYRA's position that it enjoyed a traditional attorney-client relationship with G&G, subject to the same rights and abilities to terminate as any other attorney-client relationship.

**REQUEST FOR PRODUCTION 9**:

If New NYRA did, in fact, interfere with G&G's execution of its role as integrity counsel by prematurely terminating the engagement, that would strengthen G&G's contention that the engagement term was inviolable.[3] Indeed, if such information exists, G&G will almost certainly use it in opposing the Motion to Clarify and in support of its position that G&G enjoyed a relationship with Old NYRA/New NYRA that differed in fundamental ways from the traditional attorney-client relationship. Evidence supporting G&G's claims must be made available so that this Court can fully evaluate the viability of the Motion to Clarify.

**REQUESTS FOR PRODUCTION 10 & 11**:

These requests are reasonably calculated to reveal how G&G directly interacted with its own client, which would be invaluable in developing a fuller understanding of the relationship between the parties, and to enable New NYRA to understand and, to the extent necessary, challenge G&G's characterization of that relationship. Since this Court has recognized that the nature and extent of that relationship is the central matter to be determined at a future hearing on the Motion to Clarify, New NYRA seeks these categories of documents in an effort to develop for the Court the most fulsome picture possible of that relationship.

**REQUEST FOR PRODUCTION 12 AND INTERROGATORY 9:**

If G&G really did have the type of relationship and connections that would have justified Old NYRA agreeing to an inviolable term, then, as integrity counsel to New NYRA for four years prior to the state takeover in 2012, there is a reasonable expectation that G&G would have played an instrumental role in the state takeover. Further, G&G has referenced the state takeover in arguments concerning the nature of the relationship between Old NYRA/New NYRA and G&G. *See* Getnick & Getnick LLP's Supplemental Request for Enforcement of this Court's 2007 Order and Related Relief [ECF Doc. No. 1178]; Protection Motion. New NYRA expects that G&G would use such information in opposing the Motion to Clarify and is therefore entitled to such discovery so it can fully prepare for the future hearing on the Motion to Clarify and assist this Court in evaluating the true nature of the relationship between Old NYRA/New NYRA and G&G.

Support of Motion for Reconsideration at ¶¶ 7-12 (repeating the arguments raised in the Motion

for Reconsideration).[31]  In raising these contentions New NYRA runs afoul of the well settled

parameters of Rule 59(e) and Rule 60(b) discussed above since it is making arguments that it

could have made in its opposition to the Protection Motion.  *See, e.g.*, *Exxon Shipping Co. v.*

*Baker*, 554 U.S. 471, 486, n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment,

but it may not be used to relitigate old matters, or to raise arguments or present evidence that

could have been raised prior to the entry of judgment." (internal quotations omitted) (footnotes

omitted) (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2810.1, pp.

127–128 (2d ed.1995))); *Morales v. Quintiles Transnational Corp.*, 25 F. Supp. 2d 369, 372

(S.D.N.Y. 1998) ("[Rule 59(e)] review is narrow and applies only to already-considered issues;

new arguments and issues are not to be considered."); *Westport Ins. Corp. v. Goldberger &*

*Dubin, P.C.*, 255 F. App'x 593, 595 (2d Cir. 2007) ("New arguments based on hindsight

regarding how a movant would have preferred to have argued its case do not provide grounds for

Rule 60(b) relief." (citing *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir.1986))); *In re Donald*

*Sheldon & Co., Inc.*, 222 B.R. 690, 693 (S.D.N.Y. 1998) (finding no reason why new argument

should be considered on Rule 60(b) motion).

As the Court reads New NYRA's "clarifying arguments," New NYRA urges that it

should be given full access to the Discovery Requests because: (i) the nature of the attorney-

client relationship among New NYRA and G&G will be revealed through the substance of

G&G's communications with the Oversight Committee and the contents of the reports and other

work product generated by G&G in the course of its retention as special business integrity

---

[31]  *See Reply of the New York Racing Association, Inc. In Support of Motion for Reconsideration and Reconsideration of Order Partially Granting Getnick & Getnick LLP's Motion for Protective Order* [ECF Doc. No. 1214].

counsel; (ii) it requires certain of the documents and information it is seeking to rebut what it anticipates will be G&G's arguments in opposition to the Motion to Clarify; and (iii) it requires certain of the documents and information it is seeking to assess the merits of G&G's fee request. Notwithstanding the procedural defects in the requests, and in any event, the Court does not find that the substance of the "clarifying arguments" tip the balance in New NYRA's favor in enforcing the requests. The Court will not consider G&G's Supplemental Request until after it resolves the Motion to Clarify. At that time, and on a schedule to be set by the Court, New NYRA will be free to renew its requests for documents and information related to the matters at issue in the Supplemental Requests, subject to G&G's right to oppose those requests. Thus there is no prejudice to New NYRA in denying the requests at this time. Nor will New NYRA be prejudiced by this Court's denial of its request to obtain materials it believes G&G will use in opposing the Motion to Clarify as this ruling is without prejudice to New NYRA's right to seek appropriate relief if G&G does so. Finally, the Court will not authorize access to G&G's work product. The prejudice to G&G far outweighs any potential benefit to New NYRA. As noted, it is undisputed that New NYRA was denied access to those materials while G&G served as its special business integrity counsel. As G&G correctly contends, that disclosure effectively will preempt this Court's resolution of the nature of the attorney-client relationship among the parties, since New NYRA will be afforded access to documents that it may not be able to obtain if the Court determines that the parties enjoyed a "special" attorney-client relationship, as G&G contends.

33

## Conclusion

Based on the foregoing, the request for reargument is **GRANTED**, and, without further

oral argument, the Court adheres to its November 2015 Ruling.  Accordingly, the Protection

Motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED:**

Dated: New York, New York
      October 17, 2016

/s/ *James L. Garrity, Jr.*
United States Bankruptcy Judge